861 So.2d 1267 (2003)
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Appellant,
v.
Coy A. KOONTZ, Jr., etc., Appellee.
No. 5D02-4066.
District Court of Appeal of Florida, Fifth District.
December 17, 2003.
*1268 William H. Congdon, Palatka, for appellant.
Michael D. Jones of Michael D. Jones, P.A., Winter Springs, for appellee.
PER CURIAM.
This is a case claiming inverse condemnation of property by the St. Johns River Water Management District. The trial court entered judgment for the land owner, finding the acts and conduct of the District amounted to an unreasonable exercise of its police power. The District appealed. We dismiss this appeal for lack of jurisdiction. Although the order entered below was labeled a "Final Judgment," it was not a final order. A final order is one which does not contemplate further judicial labor. McGurn v. Scott, 596 So.2d 1042 (Fla.1992). The instant order expressly contemplated further judicial labor when it remanded the matter to St. Johns Water Management District for further action pursuant to subsection 373.617(3), Florida Statutes. That subsection states:
If the court determines the decision reviewed is an unreasonable exercise of the state's police power constituting a taking without just compensation, the court shall remand the matter to the agency which shall, within a reasonable time:
(a) Agree to issue the permit;
(b) Agree to pay appropriate monetary damages; however, in determining the amount of compensation to be paid, consideration shall be given by the court to any enhancement to the value of the land attributable to governmental action; or
(c) Agree to modify its decision to avoid an unreasonable exercise of police power.
After the agency chooses one of these alternatives, the statute expressly requires further judicial labor, as follows:
(4) The agency shall submit a statement of its agreed-upon action to the court in the form of a proposed order. If the action is a reasonable exercise of police power, the court shall enter its final order approving the proposed order. If the agency fails to submit a proposed order within a reasonable time not to exceed 90 days which specifies an action that is a reasonable exercise of police power, the court may order the agency to perform any of the alternatives specified in subsection (3).
§ 373.617(4), Fla. Stat.[1] Accordingly, we dismiss the appeal.
APPEAL DISMISSED.
THOMPSON and ORFINGER, JJ., concur.
PLEUS, J., concurs, and concurs specially, with opinion.
PLEUS, J., concurring specially.
I concur that we do not have jurisdiction and must dismiss this appeal. I write only to describe the extortionate actions of St. Johns Water Management District (St. Johns) in this case as shown in the trial below. I hope that upon remand to the District, it will agree to a reasonable option for the property owner. I also hope that the District will stop the extortionate *1269 demands on property owners which this case demonstrates.
This is the second time this dispute has been before this court. Koontz v. St. Johns River Water Management District, 720 So.2d 560 (Fla. 5th DCA 1998). In Koontz I, Koontz claimed that legislation which created the Econlackhatchee River Hydrologic Basin was an unconstitutional delegation of authority. He lost that fight, but in the alternative, Koontz claimed a regulatory taking. The trial court held the issue was not ripe for decision. We reversed on the ripeness issue and remanded for trial. On remand, the case proceeded to trial on the issue of a taking.
The evidence adduced at trial shows that Coy Koontz[1] originally owned over 15 acres of land near the intersection of Highway 50 and the East-West Expressway. Due to intense development in this area, Koontz's property has been significantly altered from its original state. The Department of Transportation previously condemned a portion of the property to accommodate the widening of Highway 50, leaving Koontz with 14.9 acres. The remaining land contains a 60 foot wide drainage ditch to accommodate highway runoff and is also bisected by a 100 foot wide power line easement running parallel to and about 300 feet south of Highway 50. See attached sketch.
Koontz proposed to develop 3.7 acres closest to Highway 50, back to and including the power line easement. In order to develop his property, he sought a management and storage of surface waters permit to dredge three and one quarter acres of wetlands. A staffer from St. Johns agreed to recommend approval if Koontz would deed the remaining portion of his property into a conservation area and perform offsite mitigation by either replacing culverts four and one-half miles southeast of his property or plug certain drainage canals on other property some seven miles away. Alternatively, St. Johns demanded that Koontz reduce his development to one acre and turn the remaining 14 acres into a deed-restricted conservation area. Koontz agreed to deed his excess property into conservation status but refused St. Johns' demands for offsite mitigation or reduction of his development from three and seven-tenths acres to one acre. Consequently, St. Johns denied his permit applications.
Koontz called three experts to testify regarding the need for additional mitigation. William Fogle was an engineer hired by Koontz to obtain the permits. Based on an environmental survey, Fogle concluded that the area Koontz wanted to develop was a "relatively insignificant wetland system with ... little wildlife value," while the area Koontz was willing to give up was a "fairly significant wetlands system." Thus, Fogle believed Koontz's proposed mitigation was sufficient to offset any negative impacts to wildlife caused by the development.
Koontz also hired environmental consultant William Dennis to perform an environmental audit of the property in 2001. Dennis testified that Koontz's property had been impacted by surrounding roads, a drainage ditch, a power line easement and urbanization. Based on the already impacted condition of the property, Dennis believed Koontz' proposed development would cause "minimal" impact on wildlife. Consequently, Dennis opined that Koontz's proposed onsite mitigation was reasonable and St. Johns' demand for additional mitigation was unnecessary.
Koontz hired ecologist Jeffrey Churchill after the permit denials to evaluate his *1270 property and determine whether offsite mitigation was necessary. He found that the proposed development area was already impacted by a drainage ditch and a power line easement. On the other hand, Koontz's proposed conservation area consisted of high quality wetlands. Churchill believed the onsite mitigation was sufficient to offset any impact to the development site and that offsite mitigation was unnecessary and "very excessive." The offsite mitigation would not serve any substantial purpose. Based on the minimal amount of wildlife existing in the proposed development area, Churchill did not believe the project was contrary to the public interest.
Elizabeth Johnson, supervising regulatory scientist for St. Johns, reviewed the original permit application in 1994 and performed an onsite assessment. Although she did not observe any fish or wildlife onsite, she incredibly concluded that the proposed development would adversely affect fish and wildlife. Johnson conceded there were no fish on the property and conceded that she did not perform a wildlife survey on the property. Nevertheless, she maintained the property had significant habitat value. Johnson did not agree with Koontz's environmental study, which concluded that the proposed development site's habitat value had been "significantly altered and degraded" due to drainage of surface and subsurface water into the drainage ditch and severance of the property from other wetlands by existing roadways and utility line easements. On the contrary, Johnson decided that offsite mitigation would be required in addition to Koontz's proposed onsite mitigation. When asked by Koontz's attorney how performing offsite mitigation five or six miles away benefitted impacted wildlife on Koontz's property, Johnson responded that "five or six miles is not a long way for a bird to fly."
St. Johns' demands for additional mitigation did not further any legitimate state interest. Koontz relied on three United State Supreme Court cases: Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), Nollan v. California, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); and Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). In Agins, the Supreme Court held that the application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land.
In Nollan, the Supreme Court reaffirmed the Agins standard, holding that a decision of the California Coastal Commission to condition the granting of a rebuilding permit on the grant of a public easement across the landowners property did not substantially advance a legitimate state interest. Elaborating on the "substantially advances a legitimate state interest" prong of Agins, the Supreme Court found that the building restriction lacked an "essential nexus" to advancing a legitimate state interest and instead constituted "out-and-out plan of extortion." 483 U.S. at 837, 107 S.Ct. 3141.
In Dolan, the Supreme Court again struck down a building permit requiring the landowner to deed a strip of her land to the city for a public bicycle path. In doing so, the Court broadened the "essential nexus" test used in Nollan, stating that the city had to prove two elements: (1) that an "`essential nexus' exists between a legitimate state interest and the permit condition" exacted by the government; and (2) whether the degree of the exactions demanded by the government are "roughly proportional" to the projected impact of the proposed development.
*1271 In the instant case, the trial court correctly applied Dolan, finding that St. Johns failed to prove that conditioning the permits upon performing offsite mitigation had an essential nexus to a legitimate state interest or was roughly proportional to advancing that interest.
Koontz argued at trial that either of the alternatives proposed by St. Johns requires Koontz to dedicate a large portion of his land into a conservation easement pursuant to section 704.06, Florida Statutes (1993). This statute would allow St. Johns, or any other authorized government agency, charitable organization or trust, to "enter the land in a reasonable manner and at reasonable times to assure compliance" with the terms of the easement. § 704.06(4), Fla. Stat. (1993). Thus, St. Johns' demands required Koontz to give up an important stick in his bundle of property rights, which is the right to exclude others from his property. Nollan, 483 U.S. at 832, 107 S.Ct. 3141. St. Johns' argument that the final orders do not require a conservation easement, that onsite preservation could be accomplished with a simple deed restriction rather than a conservation easement, are disingenuous. The final orders require Koontz to preserve his land with a "conservation easement or deed restriction consistent with Section 704.06." (Emphasis added). Section 704.06(2) states that conservation easements are "perpetual, undivided interests in property that may be created or stated in the form of a restriction, easement, covenant or condition in any deed...." Thus, whether expressed in the form of a deed restriction or easement, the final orders required the orders to be consistent with the statute, which provide for access onto the land by others.
I do not believe that Tampa-Hillsborough County Expressway Auth. v. A.G.W.S. Corp., 640 So.2d 54 (Fla.1994), City of Pompano Beach v. Yardarm Restaurant, Inc., 641 So.2d 1377 (Fla. 4th DCA 1994), rev. denied, 651 So.2d 1197 (Fla.), cert. denied, 515 U.S. 1144, 115 S.Ct. 2583, 132 L.Ed.2d 832 (1995), Dept. of Transp. v. Weisenfeld, 617 So.2d 1071 (Fla. 5th DCA 1993), or any other Florida case, limits takings claims solely to cases where a landowner is deprived of substantially all economically beneficial or productive use of his land. Such a narrow reading of takings law would run afoul of the Fifth Amendment's takings clause, as applied to the states through the Fourteenth Amendment. As the Florida Supreme Court noted in Traylor v. State, 596 So.2d 957 (Fla.1992):
Under our federalist system of government, states may place more rigorous restraints on government intrusion than the federal charter imposes; they may not, however, place more restrictions on the fundamental rights of their citizens than the federal Constitution permits.... In any given state, the federal Constitution thus represents the floor for basic freedoms; the state constitution, the ceiling.
Id. at 961-962 (citations omitted). While Traylor dealt with the right to counsel, the court's discussion of federalist principles applies to other constitutionally-protected basic freedoms, including the right to prevent the government from taking private property without just compensation. In other words, Florida courts, as the trial court did in this case, cannot permit more government interference in the takings area than is permitted under the Fifth Amendment. With this in mind, if Agins provides two methods for proving a taking, Florida courts cannot say there is only one method for proving a taking.
I also believe the trial court was correct to apply Agins, Nollan and Dolan. I also conclude that its findings are supported by *1272 competent substantial evidence. St. Johns failed to prove its requirement of offsite mitigation had any "essential nexus" to the proposed development or was "roughly proportional" to the development's impact. Koontz's experts testified that the offsite mitigation was unnecessary, excessive and did not relate to any legitimate state interest. When asked to explain the nexus between the offsite mitigation demand and the proposed development, the best that St. Johns' expert could says was "five or six miles is not a long way for a bird to fly." Instead of having any essential nexus to protecting fish and wildlife potentially impacted by Koontz's development, I conclude, as Justice Scalia did in Nollan, that St. Johns' demands for offsite mitigation were nothing more than an "out-and-out plan of extortion."

NOTES
[1] We also note that the order was not an appealable non-final order. See Osceola County v. Best Diversified, Inc., 830 So.2d 139 (Fla. 5th DCA 2002).
[1] Coy Koontz died after Koontz I was decided and his son, Coy Koontz, Jr., as personal representative of his father's estate, became the plaintiff.