TORPY, J.
St. Johns River Water Management District [“the District”] appeals the trial court’s final judgment awarding Coy A. Koontz, Jr., as personal representative of the Estate of Coy A. Koontz, Sr., compensation for the District’s temporary taking of Coy A. Koontz, Sr.’s [“Mr. Koontz”] property. This is the fourth time that this case has been appealed to this Court. See Koontz v. St Johns River Water Mgmt. Dist., 720 So.2d 560 (Fla. 5th DCA 1998) *9 [“Koontz /”]; St. Johns River Water Mgmt. Dist. v. Koontz, 861 So.2d 1267 (Fla. 5th DCA 2003) [“Koontz 17”]; St. Johns River Water Mgmt. Dist. v. Koontz, 908 So.2d 518 (Fla. 5th DCA 2005) [“Koontz III ”]. We affirm.
This case involves a landowner, Mr. Koontz, who, in 1994, requested permits from the District so that he could develop a greater portion of his commercial property than was authorized by existing regulation. The District replied that it would approve the permits only if Mr. Koontz agreed to satisfy certain conditions, one of which was the performance of “off-site” mitigation involving property a considerable distance from Mr. Koontz’s property. Mr. Koontz contended that the conditions were unreasonable and rejected the offer. The District then denied the permits. Based on the permit denial, Mr. Koontz brought an inverse condemnation claim asserting an improper “exaction” by the District.[1]
In the most general sense, an “exaction” is a condition sought by a governmental entity in exchange for its authorization to allow some use of land that the government has otherwise restricted.[2] Even though the government may have the authority to deny a proposed use outright, under the exactions theory of takings jurisprudence, it may not attach arbitrary conditions to issuance of a permit. See Dolan v. City of Tigard, 512 U.S. 374, 397, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (Stevens, J., dissenting) (acknowledging correctness in majority’s conclusion that arbitrary conditions may not be imposed even when government has authority to deny permit).
In relating the circumstances giving rise to this case, the trial court explained:
The subject property is located south of State Road 50, immediately east of the eastern extension of the Easfr-West Expressway in Orange County. The original plaintiff, Coy Koontz, has owned the subject property since 1972. In 1987, a portion of the original acreage adjacent to Highway 50 was condemned, leaving Mr. Koontz with 14.2 acres. There is a 100-foot wide transmission line easement of Florida Power Corporation running parallel to and about 300 feet south of Highway 50, that is kept cleared and mowed by Florida Power. A 60-foot wide drainage ditch runs north and south on the west boundary of the property.
The portion of the site that is proposed for development has been seriously degraded from its condition in 1972, by all of the activity around it. There has been intense development in the vicinity, both residential and commercial, and road construction and other governmental projects. The site’s usefulness as an animal habitat has been severely reduced.
All but approximately 1.4 acres of the tract lies within a Riparian Habitat Protection Zone (RHPZ) of the Econlock-hatchee River Hydrological Basin and is *10 subject to jurisdiction of the St. Johns River Water Management District.
In 1994, Koontz sought approval from the District for a 3.7 acre development area adjacent to Highway 50, of which 3.4 acres were wetlands and .3 acres were uplands.
In his concurring opinion in Koontz II, Judge Pleus explained the positions taken by the parties during the permit approval process:
Koontz proposed to develop 3.7 acres closest to Highway 50, back to and including the power line easement. In order to develop his property, he sought a management and storage of surface waters permit to dredge three and one quarter acres of wetlands. A staffer from St. Johns agreed to recommend approval if Koontz would deed the remaining portion of his property into a conservation area and perform offsite mitigation by either replacing culverts four and one-half miles southeast of his property or plug certain drainage canals on other property some seven miles away. Alternatively, St. Johns demanded that Koontz reduce his development to one acre and turn the remaining 14 acres into a deed-restricted conservation area. Koontz agreed to deed his excess property into conservation status but refused St. Johns’ demands for offsite mitigation or reduction of his development from three and seven-tenths acres to one acre. Consequently, St. Johns denied his permit applications.
Id. at 1269 (Pleus, J., concurring specially). In its orders denying the permits, the District said that Mr. Koontz’s proposed development would adversely impact Riparian Habitat Protection Zone [“RHPZ”] fish and wildlife, and that the purpose of the mitigation was to offset that impact.
After hearing conflicting evidence, the trial court concluded that the District had effected a taking of Mr. Koontz’s property and awarded damages. In reaching this conclusion, the trial court applied the constitutional standards enunciated by the Supreme Court in Nollan and Dolan. In Nollan, with respect to discretionary decisions to issue permits, the Supreme Court held that the government could impose a condition on the issuance of the permit without effecting a taking requiring just compensation if the condition “serves the same governmental purpose as the developmental ban.” 483 U.S. at 837, 107 S.Ct. 3141. This test is referred to as the “essential nexus” test. In Dolan, the Court added the requirement that, for such a condition to be constitutional, there must also be a “rough proportionality” between the condition and the impact of the proposed development. 512 U.S. at 390-91, 114 S.Ct. 2309.
Here, the trial court determined that the off-site mitigation imposed by the District had no essential nexus to the development restrictions already in place on the Koontz property and was not roughly proportional to the relief requested by Mr. Koontz. The District makes no challenge to the evidentiary foundation for these factual findings. Instead, it advances arguments directed to the trial court’s jurisdiction and the legal viability of Mr. Koontz’s claim. The District argues that the lower court never had subject matter jurisdiction to hear Mr. Koontz’s claim because section 373.617(2), Florida Statutes, the statute under which Mr. Koontz maintained his claim, expressly limits the scope of circuit court review to cases in which a constitutional taking is proven. It argues that Mr. Koontz’s claim is really a challenge to the merits of the permit denial, which it contends may only be pursued in an administrative proceeding. Although the District acknowledges that an exaction claim is a form of takings claim, and is thus cogniza *11 ble under the statute, it argues that no such exaction occurred here because nothing was exacted from Mr. Koontz. This argument, although couched in terms of jurisdiction, really addresses itself to whether an exaction claim is cognizable when, as here, the land owner refuses to agree to an improper request from the government resulting in the denial of the permit. This is a question that has evoked considerable debate among academics and is the primary point of the dissent.[3]
Despite the ongoing debate, we conclude that this question has already been answered in Dolan itself, which also involved a challenge to rejected conditions. Although the Dolan majority did not expressly address the issue, the precise argument was addressed by the dissent and, thus, implicitly rejected by the majority. Dolan, 512 U.S. at 408, 114 S.Ct. 2309 (Stevens, J., dissenting). The argument was also directly addressed and rejected in Parks v. Watson, 716 F.2d 646 (9th Cir.1983), a case upon which the Supreme Court relied in deciding Nollan. See Goss v. City of Little Rock, 90 F.3d 306, 309-10 (8th Cir.1996) (Dolan applicable when owner alleges he refused permit predicated upon unlawful condition; case remanded for further proceedings); Town of Flower Mound v. Stafford Estates Ltd. P’ship, 135 S.W.3d 620, 625 (Tex.2004) (“any requirement that a developer provide[s] or do[es] something as a condition to receiving municipal approval is an exaction.”); Salt Lake County v. Bd. of Educ. of Granite Sch. Dist., 808 P.2d 1056, 1058 *12 (Utah 1991) (exactions include land dedications or payment of fees as condition for issuance of permit).[4]
The District also contends that an action does not lie here because the condition it imposed did not involve a physical dedication of land but instead a requirement that Mr. Koontz expend money to improve land belonging to the District. Again, we conclude that the Supreme Court has already implicitly decided this issue. In Ehrlich v. City of Culver City, 512 U.S. 1231, 114 S.Ct. 2731, 129 L.Ed.2d 854 (1994), the city conditioned a permit on the payment of money to build tennis courts and purchase artwork. Although the state appellate court upheld the imposition of the conditions, the Supreme Court vacated the decision and remanded the case to the state court to reexamine it in light of Dolan. Absent a more definitive pronouncement from our high court on this issue, we conclude that the distinction advanced by the District is not legally significant. See Mark Fenster, Takings Formalism and, Regulatory Fonnulas: Exactions and the Consequences of Clarity, 92 Cal. L, Rev. 609, 637 (2004) (suggesting that Supreme Court “may have settled this issue in favor of extending Nollan and Dolan to non-possessory exactions” when it remanded Ehrlich); see also Town of Flower Mound, 135 S.W.3d 620; Benchmark Land Co. v. City of Battle Ground, 103 Wash.App. 721, 14 P.3d 172 (2000).[5]
We have carefully reviewed the District’s remaining arguments but dismiss them without further discussion.
AFFIRMED.
*13 ORFINGER, J., concurs, with opinion.
GRIFFIN, J., dissents, with opinion.

. Mr. Koontz also asserted other theories that are not relevant to our disposition of this appeal.

. The "exactions” theory has roots in "the well-settled doctrine of 'unconstitutional conditions,' ” which sets constitutional limits on the manner by which the government bargains away its discretionary authority. Dolan v. City of Tigard, 512 U.S. 374, 385, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). The application of the doctrine to land-use situations evolved in the state courts over many years and was finally approved by the Supreme Court in Nollan v. California Coastal Commission, 483 U.S. 825, 839, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), and Dolan, 512 U.S. at 389, 114 S.Ct. 2309.

. The debate is sparked in part by Justice Scalia’s dissent in Lambert v. City & County of San Francisco, 529 U.S. 1045, 120 S.Ct. 1549, 146 L.Ed.2d 360 (2000). Justice Scalia was dissenting to the Court's decision to deny certiorari. He speculated that the lower court could have based its decision on three theories. He dismissed the first two theories outright as implausible, but acknowledged that the third theory was "at least plausible.” Speaking of a takings claim predicated on a rejected exaction, he said:
When there is uncontested evidence of a demand for money or other property — and still assuming that denial of a permit because of failure to meet such a demand constitutes a taking — it should be up to the permitting authority to establish either (1) that the demand met the requirements of Nollan and Dolan, or (2) that denial would have ensued even if the demand had been met....
... [Tjhe court's refusal to apply Nollan and Dolan might rest upon the distinction that it drew between the grant of a permit subject to an unlawful condition and the denial of a permit when an unlawful condition is not met.... From one standpoint, of course, such a distinction makes no sense. The object of the Court’s holding in Nollan and Dolan was to protect against the State's cloaking within the permit process " 'an out-and-out plan of extortion,’ " Nollan, 483 U.S. at 837, 107 S.Ct. 3141, 97 L.Ed.2d 677 (quoting J.E.D. Associates, Inc. v. Atkinson, 121 N.H. 581, 584, 432 A.2d 12, 14-15 (1981)). There is no apparent reason why the phrasing of an extortionate demand as a condition precedent rather than as a condition subsequent should make a difference. It is undeniable, on the other hand, that the subject of any supposed taking in the present case is far from clear. Whereas in Nollan, there was arguably a completed taking of an easement (the homeowner had completed construction that had been conditioned upon conveyance of the easement), and in Dolan there was at least a threatened taking of an easement (if the landowner had gone ahead with her contemplated expansion plans the easement would have attached), in the present case there is neither a taking nor a threatened taking of any money. If petitioners go ahead with the conversion of their apartments, the city will not sue for $600,000 imposed as a condition of the conversion; it will sue to enjoin and punish a conversion that has been prohibited.
Lambert, 529 U.S. at 1047-48, 120 S.Ct. 1549 (Scalia, J., dissenting). We view Justice Sca-lia's comments as an acknowledgment that the distinction made by the District today is one that is fairly raised, but one without any logical significance.

. The policies underpinning exactions claims clearly support this conclusion. As Justice Scalia observed: "The object of the Court’s holding in Nollan and Dolan was to protect against the State’s cloaking within the permit process 'an out-and-out plan of extortion.' ” Lambert, 529 U.S. at 1048, 120 S.Ct. 1549 (Scalia, J., dissenting) (internal citations omitted). An attempt by government to extort is no less reprehensible than a fait accompli. Nollan and Dolan are also grounded in a skepticism that there exists a correlation between the imposition of improper exactions and over regulation of property. See Nollan, 483 U.S. at 837 n. 5, 107 S.Ct. 3141 ("a regime in which this kind of leveraging of the police power is allowed would produce stringent land-use regulation which the State then waives to accomplish other purposes.’’). Even an attempt to exact improper concessions supports an inference that the affected property owner's land is over regulated.
Certainly, as the dissent suggests, Mr. Koontz could have completed the off-site work and sued for the cost, which, in hindsight, would have mitigated die amount of assessed damages. However, this does not justify a rule of law that forces an aggrieved property owner to accede to unconstitutional conditions to preserve his right to challenge the abusive practice. Furthermore, such a rule would be completely unworkable when applied to a case where the improper exaction involves a condition that materially alters the design, density or economic feasibility of the project.
The dissent justifies its conclusion by its unexplained prognosis that: "No agency in its right mind will wade into this swamp.” Although this might support an argument that Nollan and Dolan were wrongly decided, it offers no support for the dissent’s conclusion that some Nollan/Dolan claims may proceed while others may not, depending on how the property owner reacts to the offer. If the dissent is right, it is not because a contrary ruling will rein havoc on the ability of governments to do business.

. We have not overlooked the observation by the dissent that the trial court did not address tire legality of the alternative offer to permit a one-acre development, a point not raised by the District. Even if this issue is properly before us, we think the court implicitly rejected this contention. In other words, the trial court decided as fact that the conservation easement offered by Mr. Koontz was enough and that any more would exceed the rough proportionality threshold, whether in the form of off-site mitigation or a greater easement dedication for conservation.