# FILED



**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

WEST LINN CORPORATE PARK
L.L.C.,

          Plaintiff - Appellee,

  v.

CITY OF WEST LINN; BORIS PIATSKI;
JOHN DOES 1-10,

          Defendants - Appellants.

No. 05-36061

D.C. No. CV-01-01787-DCA

MEMORANDUM[*]

WEST LINN CORPORATE PARK
L.L.C.,

          Plaintiff - Appellant,

  v.

CITY OF WEST LINN; BORIS PIATSKI;
JOHN DOES 1-10,

          Defendants - Appellees.

No. 05-36062

D.C. No. CV-01-01787-DCA

Appeal from the United States District Court
for the District of Oregon

---

      [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Donald C. Ashmanskas, Magistrate Judge, Presiding

Argued and Submitted March 21, 2011
San Francisco, California

Before: TALLMAN and CLIFTON, Circuit Judges, and KORMAN, Senior District Judge.[**]

This dispute arises from the development of a corporate office park in West Linn, Oregon.[1] Plaintiff West Linn Corporate Park, LLC (WLCP), the developer, brought nine state and federal claims against the city of West Linn and several related co-defendants (collectively, the City). The City raised five counterclaims. Following a bench trial, the magistrate judge granted relief to WLCP on some of its claims, but denied relief on others. The magistrate judge also denied all five of the City's counterclaims. Both parties appealed.

We initially heard oral argument in May 2008 but then vacated submission to certify three dispositive questions of state land-use law to the Oregon Supreme Court. *West Linn Corporate Park, LLC v. City of West Linn*, 534 F.3d 1091 (9th Cir. 2008) [*9th Cir. Certif. Order*]. The Oregon Supreme Court filed its answers to our certified questions in September 2010. *West Linn Corporate Park, LLC v. City*

---

[**] The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, Brooklyn, sitting by designation.

[1] The parties are familiar with the facts, and we repeat them only as necessary to explain our disposition.

*of West Linn*, 240 P.3d 29 (Or. 2010).  With these answers in hand, we heard a second round of oral argument.  We now affirm in part, reverse and remand in part, and dismiss in part.

**I**

**A**

The magistrate judge denied WLCP's state and federal takings claims[2]—brought under the Oregon Constitution and the Fifth Amendment, respectively—relating to the off-site public improvements required by the City (claims one and two).  The magistrate judge found these claims were not ripe.  We affirm, but on alternative grounds.  *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 n.4 (9th Cir. 2009) ("[W]e may affirm the district court on any ground supported by the record . . . ." (internal quotation omitted)).

We affirm dismissal of the state takings claim (claim one) because the claim is not cognizable under the Oregon Constitution.  The Oregon Supreme Court so held in its answer to our second certified question.  *West Linn*, 240 P.3d at 49.  Thus, we need not address whether the claim is ripe.

---

[2]  WLCP refers to these claims as claims for "inverse condemnation." Inverse condemnation is simply a popular term for a takings claim in which the government has taken property without formal condemnation proceedings.  *See United States v. Clarke*, 445 U.S. 253, 257 (1980); *Suess Buildings v. City of Beaverton*, 656 P.2d 306, 309 n.3 (Or. 1982).

On the analogous federal takings claim (claim two), which we must answer independently, we also affirm the denial of relief. The heart of this Fifth Amendment claim was that the various off-site public improvements required by the City were not "roughly proportional" to the impact of WLCP's proposed office park. The rough-proportionality test finds its genesis in two Supreme Court decisions, *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994).

Both *Nollan* and *Dolan* involved a plaintiff applying for development permits and, in response, the city requiring the plaintiff to dedicate part of his or her own real property for public use. *Dolan*, 512 U.S. at 379–80; *Nolan*, 483 U.S. at 828. In each case, the Supreme Court held the city had effected a taking, thus requiring just compensation under the Fifth Amendment, because the required dedications were not proportional to the plaintiff's proposed development. *Dolan*, 512 U.S. at 391–96; *Nolan*, 483 U.S. at 834, 838–39.

Here, the conditions of development called for WLCP to construct several off-site public improvements with its personal property (money, piping, sand and gravel, etc.), but they did not require WLCP to dedicate any interest in its own real property. The Supreme Court has not extended *Nollan* and *Dolan* beyond situations in which the government requires a dedication of private real property.

4

*See Lingle v. Chevron USA, Inc.*, 844 U.S. 528, 547 (2005). We decline to do so here. Accordingly, WLCP's second claim does not allege a cognizable federal Fifth Amendment taking.[3] Like the state-law claim, we need not address whether this claim is ripe.

## B

The magistrate judge granted relief to WLCP on its state and federal takings claims relating to the vacation of Greene Street (claims four and five). On these two alternative claims, WLCP received $5,100 in damages, as well as $165,000 in attorney's fees under section 20.077(2) of the Oregon Revised Statutes and 42 U.S.C. § 1988.[4]

---

[3] This is not to say that a plaintiff in a situation like WLCP's could never obtain relief under the Constitution. WLCP might have pled its second claim as a regulatory taking under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). Instead, WLCP hitched its wagon to *Nollan* and *Dolan*, vehemently denying that this case presents a regulatory taking. Further, even where there is no Fifth Amendment taking, a plaintiff may have a due process claim against a city's arbitrary conditions of development. *Lingle*, 544 U.S. at 548 (Kennedy, J., concurring). We leave resolution of when such a claim might be viable for another day.

[4] The fee award also accounted for WLCP's success on its claim for retaliation under the First Amendment, discussed next.

This issue turns primarily on whether Ordinance 1439, passed by the West Linn City Council to vacate Greene Street, was valid under Oregon law. In our third certified question, we asked the Oregon Supreme Court to resolve this issue:

> Thus, the question we confront is whether Ordinance 1439 was an *ultra vires* act . . . . If the Oregon Supreme Court answers this question in the affirmative, the vacation of Greene Street is null and void, and we must vacate the district court's judgment that an interest in a portion of Greene Street vested in favor of WLCP, *see* Or. Rev. Stat. § 271.140, and the City's use of the disputed intersection worked a taking. *If the Oregon Supreme Court answers this question in the negative, the district court's ruling will be affirmed.*

*9th Cir. Certif. Order*, 534 F.3d at 1105 (emphasis added). The Oregon Supreme Court ultimately answered the question in the negative, holding that Ordinance 1439 was not an *ultra vires* act. *West Linn*, 240 P.3d at 53.

There is nothing left to decide here. The magistrate judge found the vacation of Greene Street vested WLCP with ownership in part of the disputed intersection at Greene and 13th streets. He further found the City had effected a taking of this property when it recorded an easement, without WLCP's permission, allowing public vehicular traffic to continue using the property. These findings of fact were not clearly erroneous.

6

We thus affirm the $5,100 damages award for WLCP on claims four and five. However, for reasons discussed next, we must remand for reapportionment of the $165,000 fee award.

**C**

The magistrate judge also granted relief to WLCP on its First Amendment retaliation claim (claim six). He concluded that the City, through its employee Boris Piatski, had unconstitutionally retaliated against WLCP by refusing to release a $264,000 performance bond posted by WLCP. WLCP received $13,053 in damages, and the magistrate judge ordered the City to release the performance bond. The $165,000 attorney's fee award discussed above also accounted for WLCP's success on this claim. We reverse.

To the extent Piatski "retaliated," he did not retaliate against any constitutionally protected conduct by WLCP. The First Amendment protects only conduct that is "inherently expressive." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). The magistrate judge found Piatski had retaliated against WLCP's refusal to dedicate its interest in the disputed intersection to the City. Even assuming this is true, WLCP's refusal to convey the disputed intersection was not "inherently expressive." *See id.* It did not convey any "particularized message." *See Texas v. Johnson*, 491 U.S. 397, 404 (1989).

7

Contrary to WLCP's arguments, refusing to convey the disputed intersection did not equate to petitioning the government for redress. Rather, WLCP was simply asserting what it believed were its property rights as part of its ongoing contractual dispute with the City.

Because there was no First Amendment protected conduct here, we reverse the judgment for WLCP on claim six. We also remand for reapportionment of the $165,000 fee award, which should account only for WLCP's success on its fourth and fifth claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).

## II

The City also appeals the magistrate judge's denial of its five counterclaims. In its first counterclaim, the City sought a maintenance bond only if it were ordered to release WLCP's performance bond. Because we are reversing the judgment for WLCP on its sixth claim, to the extent the performance bond remains in force, the City is not required to release it. In either event, the City's first counterclaim is dismissed as moot without prejudice to seeking any necessary relief on this issue on remand.

We affirm the magistrate judge's denial of the second counterclaim. The magistrate judge implicitly found that the public-improvements guarantee (PIG)

did not require WLCP to dedicate its interest in the disputed intersection to the City. This finding was not clearly erroneous.

We also affirm the magistrate judge's denial of the third through fifth counterclaims. These three counterclaims all presumed the city council's vacation of Greene Street was *ultra vires*, and thus null and void. The Oregon Supreme Court held to the contrary in its answer to our third certified question. Accordingly, the third through fifth counterclaims fail.

Each party shall bear its own costs.

**AFFIRMED in part, REVERSED & REMANDED in part, DISMISSED in part.**