LEWIS, J.
This case is before the Court for review of the decision of the Fifth District Court of Appeal in St. Johns River Water Management District v. Koontz, 5 So.3d 8 (Fla. 5th DCA 2009) (Koontz IV). In its decision, the Fifth District construed provisions of the state and federal constitutions. The district court also certified a question to be of great public importance, which we have rephrased as follows:
DO THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE X, SECTION 6(a) OF THE FLORIDA CONSTITUTION RECOGNIZE AN EXACTIONS TAKING UNDER THE HOLDINGS OF NOLLAN V. CALIFORNIA COASTAL COMMISSION, 483 U.S. 825 [107 S.Ct. 3141, 97 L.Ed.2d 677] (1987), AND DOLAN V. CITY OF TIGARD, 512 U.S. 374 [114 S.Ct. 2309, 129 L.Ed.2d 304] (1994), WHERE THERE IS NO COMPELLED DEDICATION OF ANY INTEREST IN REAL PROPERTY TO PUBLIC USE AND THE ALLEGED EXACTION IS A NON LAND-USE MONETARY CONDITION FOR PERMIT APPROVAL WHICH NEVER OCCURS AND NO PERMIT IS EVER ISSUED? [1]
We have jurisdiction. See art. V, § 3(b)(3)-(4), Fla. Const.
We rephrase the certified question to reflect that the issue presented by this case is controlled by the existing interpretation of the United States Constitution by the United States Supreme Court. This Court has previously interpreted the takings clause of the Fifth Amendment and the takings clause of the Florida Constitution coextensively. See, e.g., Tampa-Hillsborough County Expressway Auth. v. A.G.W.S. Corp., 640 So.2d 54, 58 (Fla.1994) (“We acknowledge that in striking down the offending portion of the statute in Joint Ventures, we referred to the takings clauses of our state and federal constitutions.”); Joint Ventures, Inc. v. Dep’t of Transp., 563 So.2d 622, 623 (Fla.1990) (“We answer the question in the affirmative, finding those subsections invalid as a violation of the fifth amendment to the United States Constitution and article X, section 6(a) of the Florida Constitution.”). We also rephrase the question to address the two actual factors to which the doctrine of exactions was expanded by the Fifth District-application of the doctrine to an alleged exaction that does not involve the dedication of an interest in or over real property; and application of the doctrine where an exaction does not occur and no permit is issued by the regulatory entity.
*1223 For the reasons expressed below, we answer the rephrased question in the negative and quash the decision under review.
BACKGROUND
This case has an extended procedural history. Prior to the issuance of the decision that is currently before the Court, issues related to the regulation of this property were before the Fifth District Court of Appeal on three occasions. During the first appeal, the Fifth District reversed a determination by the trial court that the claim of Coy A. Koontz, Sr. (Mr. Koontz) was not ripe for adjudication and remanded the matter for a trial on whether the actions of the St. Johns River Water Management District (St. Johns) effected a taking of Mr. Koontz’s property. See Koontz v. St. Johns River Water Mgmt. Dist., 720 So.2d 560, 562 (Fla. 5th DCA 1998) (Koontz I), review denied, 729 So.2d 394 (Fla.1999). After the trial court determined that a taking had occurred, St. Johns twice attempted to appeal that determination, but the Fifth District dismissed both appeals, concluding that the orders issued by the trial court did not constitute final orders or appealable non-final orders. See St. Johns River Water Mgmt. Dist. v. Koontz, 861 So.2d 1267, 1268 (Fla. 5th DCA 2003) (Koontz II); St. Johns River Water Mgmt. Dist. v. Koontz, 908 So.2d 518, 518 (Fla. 5th DCA 2005) (Koontz III). After the trial court entered a judgment assessing damages in favor of Coy A. Koontz, Jr., as personal representative of the Estate of Mr. Koontz, St. Johns filed an appeal to review that judgment. See Koontz IV, 5 So.3d at 8.
The decision resulting from that appeal in Koontz TV provides the following background:
This case involves á landowner, Mr. Koontz, who, in 1994, requested permits from [St. Johns] so that he could develop a greater portion of his commercial property than was authorized by existing regulation.... Based on the permit denial, Mr. Koontz brought an inverse condemnation claim asserting an improper “exaction” by [St. Johns].
In the most general sense, an “exaction” is a condition sought by a governmental entity in exchange for its authorization to allow some use of land that the government has otherwise restricted. Even though the government may have the authority to deny a proposed use outright, under the exactions theory of takings jurisprudence, it may not attach arbitrary conditions to issuance of a permit.
In relating the circumstances giving rise to this case, the trial court explained:
The subject property is located south of State Road 50, immediately east of the eastern extension of the East-West Expressway in Orange County. The original plaintiff, Coy Koontz, has owned the subject property since 1972. In 1987, a portion of the original acreage[2] adjacent to Highway 50 was condemned, leaving Mr. Koontz with 14.2 acres. There is a 100-foot wide transmission line easement of Florida Power Corporation running parallel to and about 300 feet south of Highway 50, that is kept cleared and mowed by Florida Power....
[[Image here]]
*1224 All but approximately 1.4 acres of the tract lies within a Riparian Habitat Protection Zone (RHPZ) of the Econlockhatchee River Hydrological Basin and is subject to jurisdiction of the St. Johns River Water Management District.
In 1994, Koontz sought approval from [St. Johns] for a 3.7 acre development area adjacent to Highway 50, of which 3.4 acres were wetlands and .3 acres were uplands.
In his concurring opinion in Koontz II, Judge Pleus explained the positions [advanced] by the parties during the permit approval process:
Koontz proposed to develop 3.7 acres closest to Highway 50, back to and including the power line easement. In order to develop his property, he sought a management and storage of surface waters permit to dredge three and one quarter acres of wetlands. A staffer from St. Johns agreed to recommend approval if Koontz would deed the remaining portion of his property into a conservation area and perform offsite mitigation by either replacing culverts four and one-half miles southeast of his property or plug certain drainage canals on other property some seven miles away. Alternatively, St. Johns demanded that Koontz reduce his development to one acre and turn the remaining 14 acres into a deed-restricted conservation area. Koontz agreed to deed his excess property into conservation status but refused St. Johns’ demands for offsite mitigation or reduction of his development from three and seven-tenths acres to one acre. Consequently, St. Johns denied his permit applications.
Id. at 1269 (Pleus, J., concurring specially). In its orders denying the permits, [St. Johns] said that Mr. Koontz’s proposed development would adversely impact Riparian Habitat Protection Zone [“RHPZ”] fish and wildlife, and that the purpose of the mitigation was to offset that impact.
• After hearing conflicting evidence, the trial court concluded that [St. Johns] had effected a taking of Mr. Koontz’s property.... In reaching this conclusion, the trial court applied the constitutional standards enunciated by the Supreme Court in Nollan and Dolan. In Nollan, with respect to discretionary decisions to issue permits, the Supreme Court held that the government could impose a condition on the issuance of the permit without effecting a taking requiring just compensation if the condition “serves the same governmental purpose as the developmental ban.” 483 U.S. at 837, 107 S.Ct. 3141. This test is referred to as the “essential nexus” test. In Dolan, the Court added the requirement that, for such a condition to be constitutional, there must also be a “rough proportionality” between the condition and the impact of the proposed development. 512 U.S. at 390-91, 114 S.Ct. 2309.
Koontz IV, 5 So.3d at 9-10 (footnotes omitted) (citations omitted).
After the circuit court determined that St. Johns had effected a taking of Mr. Koontz’s property, statutory law required St. Johns to take one of three possible actions: (a) agree to issue the permit; (b) agree to pay damages; or (c) agree to modify its decision to avoid an unreasonable exercise of police power. See § 373.617(3), Fla. Stat. (2002). Here, St. Johns chose to issue the permits to Mr. Koontz after it received additional evidence which demonstrated that the amount of wetlands on Mr. Koontz’s property was significantly less than originally *1225 believed. The circuit court subsequently awarded Mr. Koontz $876,154 for a temporary taking of his property by St. Johns.
On appeal, St. Johns first contended that the trial court lacked subject matter jurisdiction to consider Mr. Koontz’s exac-tions claim because the statute under which the claim was asserted, section 373.617, Florida Statutes (1993), limited circuit court review to cases in which a constitutional taking has actually occurred. See Koontz IV, 5 So.3d at 10. St. Johns asserted that although an exactions claim is a form of taking and is cognizable under section 373.617, no exaction occurred here because nothing had been taken from Mr. Koontz. See id. at 10-11. The original limitations applicable to the property were never challenged. The Fifth District Court of Appeal framed this challenge as “whether an exaction claim is cognizable when, as here, the land owner refuses to agree to an improper request from the government resulting in the denial of the permit.” Id. at 11. The district court concluded that the United States Supreme Court had implicitly determined in Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), that an exaction occurs under such circumstances. See 5 So.3d at 11.
St. Johns also contended that an action for inverse condemnation lacked merit because the condition proposed by St. Johns did not involve a physical dedication of land but instead would have caused Mr. Koontz to expend money for improvement of land belonging to St. Johns if accepted. See id. at 12. The Fifth District Court of Appeal also rejected this assertion and concluded that the United States Supreme Court had implicitly decided this issue adverse to St. Johns in Ehrlich v. City of Culver City, 512 U.S. 1231, 114 S.Ct. 2731, 129 L.Ed.2d 854 (1994). See 5 So.3d at 12. In Ehrlich, the United States Supreme Court vacated a lower court decision that approved the conditioning of a permit on the payment of money to build tennis courts and purchase artwork and remanded the case for reconsideration in light of Dolan. See id. (citing Ehrlich, 512 U.S. 1231, 114 S.Ct. 2731). The Fifth District concluded that in the absence of a more definite pronouncement from the United States Supreme Court on this issue, the distinction advanced by St. Johns was not legally significant. See Koontz IV, 5 So.3d at 12. The Fifth District affirmed the trial court judgment awarding compensation to Mr. Koontz. See id.
In dissent, Judge Griffin asked, “[i]n what parallel legal universe or deep chamber of Wonderland’s rabbit hole could there be a right to just compensation for the taking of property under the Fifth Amendment when no property of any kind was ever taken by the government and none ever given up by the owner?” Id. at 20 (Griffin, J., dissenting). Judge Griffin asserted that whether a taking has occurred depends on whether a landowner gives up any protected interest in his or her land:
If [a protected interest is given up], whether temporarily or permanently, the landowner is entitled to compensation as set forth in the “taking” cases. If, however, the unconstitutional condition does not involve the taking of an interest in land, the remedy of inverse condemnation is not available. In this case, the objected-to condition that was found to be an exaction was not an interest in land; it was the requirement to perform certain off-site mitigation in the form of clean-up of culverts and ditches to enhance wetlands several miles away.
Id. at 18 (Griffin, J., dissenting). Judge Griffin also reasoned that whether a condition that has been rejected can constitute a *1226 taking was not resolved in Dolan, and that a taking does not occur under such circumstances:
In this case, if Mr. Koontz had given in to [St. Johns’] condition, gotten his development permit and done the off-site mitigation, he would be entitled to recover the value of the off-site mitigation. If he elected to refuse the offer, he had a judicial remedy to invalidate the condition. ... The parcel of land for which he sought the development permit was not, however, in any wise “taken” by [St. Johns]. The only way a “taking” can even be conceptualized in such a circumstance is by adopting the view that by proposing an “unconstitutional condition” that was rejected, [St. Johns] forfeited its right (and duty) to protect the public interest to refuse the permit at all.
Id. at 20-21 (Griffin, J., dissenting).
St. Johns subsequently filed a motion for certification, which the Fifth District Court of Appeal granted. See id. at 22. The district court then certified a question to this Court as one of great public importance.
ANALYSIS

Standard of Review and Constitutional Provisions

As a preliminary matter, the interpretation of a constitutional provision is a question of law that is reviewed de novo. See Fla. Dep’t of Rev. v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005).
The Fifth Amendment to the United States Constitution provides that private property shall not be taken for public use without just compensation. See amend. V, U.S. Const. The Fifth Amendment is applicable to the states through the Fourteenth Amendment. See Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). The purpose behind the takings doctrine is to prevent government from forcing an individual to bear burdens that should be carried by the public as a whole. See Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). The takings provision of the Florida Constitution provides: “No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.” Art. X, § 6(a), Fla. Const. As previously discussed, this Court has interpreted the takings clauses of the United States and Florida Constitutions coexten-sively. See A.G.W.S. Corp., 640 So.2d at 58; Joint Ventures, 563 So.2d at 623.

Takings Under Supreme Court Case Law

The United States Supreme Court has stated that the takings clause of the Fifth Amendment does not prohibit the taking of private property by the government, but instead places conditions on the exercise of that power. See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 314, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The clause is not intended to limit government interference with property rights, but rather to secure compensation where otherwise proper interference amounts to a taking. See id. at 315, 107 S.Ct. 2378.
Outside the special context of land-use exactions (discussed below), the United States Supreme Court has recognized two types of regulatory actions that generally constitute per se takings under the Fifth Amendment. First, if government action causes a permanent physical invasion of private property, the government must provide just compensation to the owner of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 *1227 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (taking occurred where state law required landlords to allow cable companies to install cable equipment in their apartment buildings). Second, a government regulation that completely deprives an owner of all economically beneficial use of his or her property effects a Fifth Amendment taking. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). In Lucas, the United States Supreme Court held that the government must pay just compensation for such “total regulatory takings,” id. at 1026, 112 S.Ct. 2886, except to the extent that the owner’s intended use of his or her property is restricted by nuisance and property law. See id. at 1026-32, 112 S.Ct. 2886.
Aside from regulations that allow physical invasions of private property or deprive a property owner of all beneficial property use, regulatory takings challenges are governed by the standard articulated in Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The United States Supreme Court in Penn Central acknowledged that it had previously been unable to establish any “set formula” for evaluating regulatory takings claims, but identified a number of factors that have particular significance. Id. at 124, 98 S.Ct. 2646. The United States Supreme Court stated that the primary factor to consider is “[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.” Id. The Supreme Court also concluded that the character of the governmental action, such as whether the action constitutes a physical invasion or merely impacts property interests, can be relevant to a determination of whether a taking has occurred. See id. The Penn Central standard has served as the principal guide for assessing allegations that a regulatory taking has occurred where the government action does not fall within the physical-invasion or Lucas takings categories.
With regard to the doctrine of exactions, in the late 1980s and early-to-mid 1990s, the United States Supreme Court issued two decisions, Nollan v. California Coastal Commission, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), a California case that involved a beach pass-through easement, and Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), an Oregon case that involved storm-water and bike-path land dedications. These cases arose from landowner requests for building permits to expand the structures located on their real property. In response, the pertinent governmental entities approved the permits, but conditioned that approval on the receipt of exactions.
In Nollan, the California Coastal Commission approved the Nollans’ request for a building permit subject to the dedication of an easement that would allow the public to pass across the beach that was owned by the Nollans behind their home. See 483 U.S. at 828, 107 S.Ct. 3141. The Nol-lans proceeded to build their expanded home but legally contested the exaction imposed as an uncompensated taking. See id. at 828-30, 107 S.Ct. 3141. On certiora-ri review, the United States Supreme Court articulated an “essential nexus” test, which required a government entity to establish that the condition imposed for approval of a building permit (i.e., the exaction) served the same public purpose that would have supported a total ban of the proposed development. See 483 U.S. at 836-37, 107 S.Ct. 3141. Thus, if (as the Commission asserted) the public’s right to view the shore from the street was the supporting reason for denying the Nol- *1228 Ians’ permit, the proposed condition/exaction must directly relate to and further this supporting reason. See id. at 835-38, 107 S.Ct. 3141. For example, a height restriction on the proposed development to preserve the view corridor might satisfy the requirement. See id. at 836, 107 S.Ct. 3141. However, the easement at issue in Nollan, which would allow members of the public to pass across beach owned by the Nollans, failed this test because the right of the public to view the shore from a nearby street was not served by the ability of individuals to traverse up and down the Nollans’ beach property. See id. at 838-39, 107 S.Ct. 3141. Thus, the United States Supreme Court concluded that if the State of California desired an easement across the Nollans’ property, the State must pay compensation for that easement. See id. at 841^2, 107 S.Ct. 3141.
On certiorari review in Dolan, the Court expanded upon Nollan to not only require an “essential nexus” between the permit-approval condition upon the land and the alleged public problem caused by the proposed development, but also to require “rough proportionality” between the condition placed on the land and the extent of the impact of the proposed development. See 512 U.S. at 391, 114 S.Ct. 2309. For example, where (as in Dolan) one asserted impact of the development was increased traffic congestion, and the permit-approval condition on the property was the dedication of land for a bike path, the government must demonstrate that the additional number of vehicle and bicycle trips generated by the development are reasonably related to the government’s requirement for dedication of a bicycle path easement over the property. See id. at 387-88, 395-96, 114 S.Ct. 2309. Similar to Nollan, the government entity in Dolan approved the requested permit subject to contested conditions on the land (i.e., storm-water and bike-path land dedications), and the landowner filed an action claiming that these conditions over the land constituted uncompensated takings. See Dolan, 512 U.S. at 379-83, 114 S.Ct. 2309.
In the sixteen years since the Supreme Court issued Dolan, the High Court has only commented twice on the scope of the Nollan/Dolan test. In City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 698, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), the developer submitted nineteen different site plans to the City of Monterey for development of an oceanfront parcel of land. Each time, the city rejected the plan and imposed even more rigorous conditions upon the developer. See id. at 697-98, 119 S.Ct. 1624. When the developer concluded that the city would not permit development under any circumstances, it filed suit in federal court contending that the final denial of development constituted a regulatory taking of the property. See id. at 698, 119 S.Ct. 1624. The United States Supreme Court concluded that the Nollan/Dolan exactions standard was inapplicable to the actions of the city:
[W]e have not extended the rough-proportionality test of Dolan beyond the special context of exactions — land-use decisions conditioning approval of development on the dedication of property to public use. See Dolan, [512 U.S.] at 385 [114 S.Ct. 2309]; Nollan v. California Coastal Comm’n, 483 U.S. 825, 841 [107 S.Ct. 3141, 97 L.Ed.2d 677] (1987). The rule applied in Dolan considers whether dedications demanded as conditions of development are proportional to the development’s anticipated impacts. It was not designed to address, and is not readily applicable to, the much different questions arising where, as here, the landowner’s challenge is based not on excessive exactions but on denial of de *1229 velopment. We believe, accordingly, that the rough-proportionality test of Dolan is inapposite to a case such as this one.
Id. at 702-03, 119 S.Ct. 1624 (emphasis supplied). More recently, in Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), the United States Supreme Court rejected a takings test that it had previously adopted in Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). See Lingle, 544 U.S. at 548, 125 S.Ct. 2074 (“We hold that the ‘substantially advances’ formula is not a valid takings test....”). The Agins standard had been mentioned in both Nollan and Dolan, which caused the Supreme Court to expressly note that its rejection of that standard had no impact on the holdings of these two more recent cases. See id. at 546-48, 125 S.Ct. 2074. In the context of this discussion, the Supreme Court reasoned that Nollan and Dolan involved Fifth Amendment takings challenges to adjudicative land-use exac-tions — more specifically, government demands that landowners dedicate easements over their land to allow the public access across their property as a condition of obtaining development permits. See id. at 546, 125 S.Ct. 2074. The Court further stated that it refined the Nollan “essential nexus” test in Dolan by holding that
an adjudicative exaction requiring dedication of private property must also be “ ‘roughfiy] proportional!]’ ... both in nature and extent to the impact of the proposed development.” 512 U.S., at 391 [114 S.Ct. 2309]; see also Del Monte Dunes, supra, at 702 [119 S.Ct. 1624] (emphasizing that we have not extended this standard “beyond the special context of [such] exactions”).
Id. at 547, 125 S.Ct. 2074 (alterations in original) (emphasis supplied).

The Scope of the Nollan/Dolan Test

State and federal courts have been inconsistent with regard to interpretations of the scope of the Nollan/Dolan test, even after the decisions in Del Monte Dunes and Lingle. The divide is most clearly evident on the issue of whether the test applies to conditions that do not involve the dedication of land or conditions imposed upon the land.
One line of cases holds that the Nol-lan/Dolan standard applies solely to exac-tions cases involving land-use dedications. See, e.g., McClung v. City of Sumner, 548 F.3d 1219, 1228 (9th Cir.2008) (distinguishing monetary conditions from conditions on the land); Clajon Prod. Corp. v. Petera, 70 F.3d 1566, 1578 (10th Cir.1995); Sea Cabins on the Ocean IV Homeowners Ass’n v. City of N. Myrtle Beach, 345 S.C. 418, 548 S.E.2d 595, 603 n. 5 (2001) (holding that Del Monte Dunes clarified that Nollan and Dolan only apply to physical conditions imposed upon land).
The other line of cases holds that the Nollan/Dolan test extends beyond the context of the imposition of real property conditions on real property. For example, the California Supreme Court has held that non-real property conditions can constitute a taking where the condition is imposed on a discretionary, individualized basis. See Ehrlich v. City of Culver City, 12 Cal.4th 854, 50 Cal.Rptr.2d 242, 911 P.2d 429, 444 (1996). However, in Town of Flower Mound v. Stafford Estates Ltd. Partnership, 135 S.W.3d 620, 640-41 (Tex.2004), the Texas Supreme Court expanded application of the test further, holding that Nollan and Dolan can apply to certain non-real property conditions that arise from generally applicable regulations.
Despite the varied interpretations of the scope of Nollan/Dolan, we must follow the decisions of the United States Supreme Court with regard to Fifth *1230 Amendment takings jurisprudence. See Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 220-21, 51 S.Ct. 453, 75 L.Ed. 983 (1931) (state courts are bound by United States Supreme Court’s interpretations of federal law); Carnival Corp. v. Carlisle, 953 So.2d 461, 465 (Fla.2007) (state courts are generally not bound by the decisions of the lower federal courts on questions of federal law). Moreover, the Supreme Court itself has specifically stated that when it denies certiorari review, that denial “imports no expression of opinion upon the merits of the case.” Teague v. Lane, 489 U.S. 288, 296, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (quoting United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923)). Thus, we decline to interpret a decision of the United States Supreme Court not to review a case that addresses an exactions issue as an approval of the merits or holding of the underlying decision in that case.
Instead, we are guided only by decisions in which the Supreme Court has expressly applied, or commented upon the scope of, exactions takings. Nollan and Dolan both involved exactions that required the property owner to dedicate real property in exchange for approval of a permit. See Dolan, 512 U.S. at 380, 114 S.Ct. 2309; Nollan, 483 U.S. at 827, 107 S.Ct. 3141. Additionally, in both cases the regulatory entities issued the permits sought with the objected-to exactions imposed. See Dolan, 512 U.S. at 379, 114 S.Ct. 2309; Nollan, 483 U.S. at 828, 107 S.Ct. 3141. Moreover, in Del Monte Dunes and Lingle, the United States Supreme Court specifically limited the scope of Nollan and Dolan to those exactions that involved the dedication of real property for a public use. See Lingle, 544 U.S. at 546-47, 125 S.Ct. 2074; Del Monte Dunes, 526 U.S. at 702-03, 119 S.Ct. 1624. Absent a more limiting or expanding statement from the United States Supreme Court with regard to the scope of Nollan and Dolan, we decline to expand this doctrine beyond the express parameters for which it has been applied by the High Court.[3] Accordingly, we hold that under the takings clauses of the United States and Florida Constitutions, the Nollan/Do-lan rule with regard to “essential nexus” and “rough proportionality” is applicable only where the condition/exaction sought by the government involves a dedication of or over the owner’s interest in real property in exchange for permit approval; and only when the regulatory agency actually issues the permit sought, thereby rendering the owner’s interest in the real property subject to the dedication imposed.
It is both necessary and logical to limit land-use exactions doctrine to these narrow circumstances. Governmental entities must have the authority and flexibility to independently evaluate permit applications and negotiate a permit award that will benefit a landowner without causing undue harm to the community or the environment. If a property owner is authorized to file an inverse condemnation claim on the basis of the exactions theory any time *1231 regulatory negotiations are not successful and a permit is denied, two undesirable outcomes inevitably ensue. First, the regulation of land use, deemed by the United States Supreme Court to be “peculiarly within the province of state and local legislative authorities,” would become prohibitively expensive. Warth v. Seldin, 422 U.S. 490, 508 n. 18, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); see also Tahoe-Sierra Preserv. Council, Inc. v. Tahoe Reg’l Planning Agency, 535 U.S. 302, 324, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (“Land-use regulations are ubiquitous and most of them impact property values in some tangential way — often in completely unanticipated ways. Treating them all as per se takings would transform government regulation into a luxury few governments could afford.”).
Second, and as a result of the first consequence, agencies will opt to simply deny permits outright without discussion or negotiation rather than risk the crushing costs of litigation. Property owners will have no opportunity to amend their applications or discuss mitigation options because the regulatory entity will be unwilling to subject itself to potential liability. Land development in certain areas of Florida would come to a standstill. We decline to approve a rule of law that would place Florida land-use regulation in such an unduly restrictive position.
Based on the above analysis, we conclude that the Fifth District in Koontz IV erroneously applied the Nollan/Dolan ex-actions test to the offsite mitigation proposed by St. Johns. Since St. Johns did not condition approval of the permits on Mr. Koontz dedicating any portion of his interest in real property in any way to public use, this analysis does not apply. Further, even if we were to conclude that the Nollan/Dolan test applied to non-real property exactions — which we do not — Mr. Koontz would nonetheless fail in his exac-tions challenge because St. Johns did not issue permits, Mr. Koontz never expended any funds towards the performance of off-site mitigation, and nothing was ever taken from Mr. Koontz. As noted by the United States Supreme Court, Nollan and Dolan were not designed to address the situation where a landowner’s challenge is based not on excessive exactions but on a denial of development. See Del Monte Dunes, 526 U.S. at 703, 119 S.Ct. 1624. Here, all that occurred was that St. Johns did not issue permits for Mr. Koontz to develop his property based on existing regulations and, therefore, an exactions analysis does not apply. See id. (“[T]he rough-proportionality test of Dolan is inapposite to a case such as this one.”).
CONCLUSION
Based on our analysis in this case, we answer the rephrased certified question in the negative, quash the decision of the Fifth District in Koontz IV, and remand for proceedings consistent with this opinion. We emphasize that our decision today is limited solely to answering the rephrased certified question. We decline to address the other issues raised by the parties.
It is so ordered.
PARIENTE, LABARGA, and PERRY, JJ., concur.
QUINCE, J., concurs in result only.
POLSTON, J., concurs in result only with an opinion, in which CANADY, C.J., concurs.

. The original certified question provided:
WHERE A LANDOWNER CONCEDES THAT PERMIT DENIAL DID NOT DEPRIVE HIM OF ALL OR SUBSTANTIALLY ALL ECONOMICALLY VIABLE USE OF THE PROPERTY, DOES ARTICLE X, SECTION 6(a) OF THE FLORIDA CONSTITUTION RECOGNIZE AN EXACTION TAKING UNDER THE HOLDINGS OF NOLLAN [n.1] AND DOLAN [n.2] WHERE, INSTEAD OF A COMPELLED DEDICATION OF REAL PROPERTY TO PUBLIC USE, THE EXACTION IS A CONDITION FOR PERMIT APPROVAL THAT THE CIRCUIT COURT FINDS UNREASONABLE?
[n.1] A Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).
[n.2.] Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).
Koontz IV, 5 So.3d at 22.

. Mr. Koontz owned a total of 14.9 acres in Orange County. See Koontz I, 720 So.2d at 561.

. Our holding today is consistent with the 2011 decisions of two federal appellate courts, both of which held that Nollan and Dolan are inapplicable to cases that do not involve the dedication of real property for a public use. See Iowa Assurance Corp. v. City of Indianola, 650 F.3d 1094, 1096-97 (8th Cir.2011) (ordinance which required an enclosed fence to surround areas where two or more race cars are present not subject to a Nollan/Dolan exactions analysis); West Linn Corporate Park, LLC v. City of West Linn, 428 Fed.Appx. 700, 702 (9th Cir.2011) (refusing to extend Nollan/Dolan where city required developer to construct several off-site public improvements but did not require dedication of developer's interest in real property), petition for cert. filed, 80 U.S.L.W. 3135 (U.S. Sept. 6, 2011) (No. 11-299).