720 So.2d 560 (1998)
Coy A. KOONTZ, Appellant,
v.
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Appellee.
No. 97-3285.
District Court of Appeal of Florida, Fifth District.
September 18, 1998.
Rehearing Denied November 19, 1998.
*561 Michael D. Jones and Michael L. Boswell, of Leffler & Associates, P.A., Winter Springs, for Appellant.
William H. Congdon, of St. Johns River Water Management District, Palatka, for Appellee.
HARRIS, Judge.
Coy Koontz owns 14.9 acres in Orange County. He has owned the property, zoned commercial in front and residential in the rear, since 1971. Legislative land-use restrictions have been enacted over the years which substantially impact the property. The property is located on a tributary of the Econlockhatchee River in an area now designated by the St. Johns River Management District (St.Johns) as a part of a designated hydrologic basin and largely within the Riparian Habitat Protection Zone. Nevertheless, Koontz wanted to develop a portion of his property. He sought a management and storage of surface waters permit to dredge 3.4 acres of wetlands with an accompanying wetland resource management permit from St. Johns.
A staff person of St. Johns agreed to recommend approval if Koontz would deed the remaining portion of his property to a conservation area and do off-site mitigation by either replacing culverts on St. Johns' property four and one-half miles southeast of the Koontz property or by plugging certain canals on other property owned by St. Johns some seven miles from the Koontz property. Koontz agreed to deed his excess property into conservation status but refused the off-site mitigation demand. St. Johns rejected his application.
Koontz sued in circuit court claiming that St. Johns had no legislative authority to create the Econlockhatchee River Hydrologic Basin because the legislation relied on unconstitutionally delegated such authority. Alternatively, he sued to establish a regulatory taking. The trial court upheld the District's authority to designate the hydrological basin and determined that his regulatory taking was not ripe. We affirm the validity of the statutes [1] under the authority of St. Johns *562 River Management District v. Consolidated-Tomoka Land Co., 717 So.2d 72 (Fla. 1st DCA July 29, 1998). See also, Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978); We reverse the ripeness determination and remand for trial.
It is St. Johns' position that since there was a chance that a modified application might be approved, there was no final agency action. To be more precise, the District argued that since it had indicated that it would have granted the application if the owner had agreed to the off-site improvements, the owner should be required to make additional filings making other concessions until the District finally approves the permits before the owner is permitted to pursue a regulatory taking. We disagree. Koontz made a specific application to the District for permits that would permit him to develop a fraction of his property. His position, in effect, was that the application he filed and the concessions he was willing to make to the District in order for it to issue the permits (his giving up over two-thirds of his property to the District) was all that he could do and still retain an economic use of his property. The District turned him down. It made a final decision on the only application before it. One of the members of the District observed: "If they got a lawyer they ought to get him, get on with him." There is no requirement that an owner turned down in his effort to develop his property must continue to submit offers until the governing body finally approves one before he can go to court.[2] If the governing body finally turns down an application and the owner does not desire to make any further concessions in order to possibly obtain an approval, the issue is ripe. The owner in this case drew a line in the sand and told the District: "I can go no further." Whether the owner can now convince the court that there has, in fact, been a taking is the issue properly before the trial court.
AFFIRMED in part; REVERSED in part and REMANDED for further action consistent with this opinion.
DAUKSCH and W. SHARP, JJ., concur.
NOTES
[1] Koontz attacked the validity of the legislative grant of power to St. Johns to regulate or even designate the Econlockhatchee River Ecological Basin. We uphold the legislation. We are concerned, however, with the District's application of the statutes and/or its rules. A staff person determined that Koontz would have to give two-thirds of his property and do mitigation work on either of two parcels owned by the District in order to get his permits. We inquired at oral argument just where an owner could look in the statutes or in the District's rules to see what would be required of him to get a permit. By what criteria did the staff person determine that two-thirds of his property would be required instead of one-half? Why was off-site mitigation necessary and, if necessary, why not require mitigation on both parcels? What would insure that if his neighbor made a similar application, similar demands would be made of him? Would the District's requirements have been the same if a different staff person had been assigned to the case? How does a landowner or a prospective buyer reasonably assess what the District is likely going to require in order for development to take place in areas regulated by the District. The attorney for the District could do no better than say the requirements are set out somewhere in the statutes and the rules. Perhaps if the specific question had been raised on appeal, we could have gotten a better answer.
[2] The trial court seemed to justify its denial of the owner's regulatory taking count, in large part, on the statement in Williamson Co. Regional Planning v. Hamilton Bank, 473 U.S. 172, 191, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985):

[A determination as to whether one has been denied the economically feasible use of his property] simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.
But in Williamson, the applicant had not applied, and been turned down, for a variance that could have substantially affected the use of his property. Here, there was no other procedure left to the applicant to realize the economic feasibility of his project. The owner's only hope was for the District to change its mind on its conditions for approving the grant of the permits. St. Johns suggests that Koontz should have been required to submit another application offering to give the District two-thirds of his property and do the off-site improvements to one of the parcels owned by the District. And if the District still rejected the plan, he should have been required to submit yet another application agreeing to give two thirds of his property and possibly do the off-site improvements on the District's property but perhaps capping the cost to a particular amount. Such a requirement would eventually discourage the owner so that he might just go away. Here, the District turned down the owner's final submission. The issue is ripe.