MORRIS, Judge.
Highlands-In-The-W oods, L.L.C. (Highlands), appeals a final summary judgment entered in favor of Polk County on Highlands’ three-count complaint for declaratory relief and for inverse condemnation under both the U.S. and Florida Constitutions. Polk County conditioned Highlands’ permit for development of a subdivision on the installation of a reclaimed water use system in the subdivision and the dedication of the system to the County. In this appeal, Highlands argues that these exactions constitute an unlawful taking. We disagree and affirm the trial court’s decision to grant summary judgment in favor of Polk County.
In its 2009 complaint, Highlands alleged that it is the owner and developer of a sixty-lot, single-family subdivision in Polk County. In 2003 the County conditioned Highlands’ receipt of development permits on Highlands’ installation of a system that would connect to a reclaimed water system. This condition was authorized by section 702.G of the Polk County Land Development Code, adopted in 2003, which provides the following:
For any development where water reuse systems are available, connection to such reuse system shall be required. A municipal, County owned, or private Water Reuse System is considered to be available when:
1. There is sufficient capacity to' serve the subject property, and
2. An adequately sized distribution system is within one mile of the property.
Highlands referred to the reclaimed water system it was required to install as “reuse improvements.” The County also required Highlands to dedicate the reuse improvements to the County, which included a parcel of land that houses the above-ground main reuse line facility.
Highlands became aware in 2006 that several developments had been unable to connect to a reclaimed water system due to the construction boom during those years and the resulting unavailability of reclaimed water. This caused Highlands to consider installing an irrigation well for use in the common areas of the development. Highlands decided against installing such a well after it received assurances from the County that there was sufficient reclaimed water capacity to serve the subdivision. Thereupon, Highlands installed landscaping in the common areas in an effort to complete development of the subdivision.
Later in 2006, the County informed Highlands that reclaimed water was unavailable to Highlands due to demand exceeding supply but that the reuse lines were still required in the subdivision. Highlands was required to reroute its irrigation system and use potable water for irrigation of the landscaping it had planted in the common areas. In November 2006, at a meeting of the Board of County Commissioners, the County accepted and took possession of the reuse improvements from Highlands. Highlands alleged that reclaimed water was unavailable for the subdivision until 2008.
Highlands claimed that when the County issued permits for the subdivision, it knew or should have known that reclaimed water was not available. Highlands claimed that the reuse improvements resulted in additional expense and delayed the completion *1177 of the subdivision. It also alleged that the cost of using potable water for irrigation for two years was considerably higher than the cost of installing a well, an option that Highlands considered but decided against after the County assured it that reclaimed water would be available. Highlands further alleged that despite a demand by Highlands, the County refused to compensate Highlands for its property rights.
In its count for declaratory relief, Highlands asked the trial court to enter a judgment declaring that the County’s conditioning of the permits on the reuse improvements was an unlawful exaction and regulatory taking and that Highlands is entitled to compensation from the County. In its count for inverse condemnation under the Florida Constitution, Highlands argued that the County’s requirement that Highlands install the reuse improvements and the taking of those improvements substantially interfered with Highlands’ property rights and deprived Highlands of the use of those portions of the subdivision. It also alleged that the taking of the reuse improvements without compensation constitutes an unlawful taking. In its count for inverse condemnation under the U.S. constitution, Highlands alleged a taking under the Fifth and Fourteenth Amendments.
Both Highlands and the County moved for summary judgment. After a hearing, the trial court entered summary judgment in favor of the County. The trial court first concluded that declaratory judgment was not appropriate for an action for inverse condemnation. The court then ruled that Highlands’ inverse condemnation claim based on Florida law fails because Highlands has clearly not been substantially deprived of all beneficial uses of its property and because the inability to develop a small portion of its property does not constitute an unconstitutional taking when the property in its entirety is considered. The court further concluded that because Highlands dedicated the property to the County, an inverse condemnation claim is not supported under Florida law. As for the federal claim, the court concluded that an unconstitutional exaction cannot be based on the temporary unavailability of reclaimed water and the necessity of temporarily installing an alternative system for watering landscape. The court ruled that the County’s requirement was uniformly mandated for all new developments and was not an adjudicative decision requiring Highlands to bear some singular and unfair burden.
On appeal, Highlands argues that the trial court misapprehended its claims and contends that the County’s requirement that it install and dedicate the reuse improvements constituted an unlawful exaction and regulatory taking that was not “roughly proportional” to the County’s interest in reducing Highlands’ use of potable water. Highlands argues that its claims were based on the unavailability of reclaimed water at the time of the dedication and the County’s violation of its own ordinance requiring that sufficient reclaimed water be available. Highlands claims that the taking constituted an inverse condemnation for which Highlands must be compensated.
The County responds that the County’s requirement that Highlands install the reuse improvements was based on a County ordinance and was therefore not an adjudicative decision subject to the Nollan and Dolan standard. See Nollan v. Cal. Coastal Comm’n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); Dolan v. City of Tigard, 512 U.S. 374,. 384, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). The County also argues that even if the standard in Nollan and Dolan applies, there is no taking because the requirement passes the essential nexus and rough proportionality tests of that standard.
*1178 We review de novo the trial court’s determination that the County was entitled to—and that Highlands was not entitled to—a judgment as a matter of law. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000). The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits the taking of private property “for public use, without just compensation.” U.S. Const. amends. V, XIV, § 1; Dolan, 512 U.S. at 383-84, 114 S.Ct. 2309 (quoting Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897), and U.S. Const. amend. V). “One of the purposes of the Takings Clause is ‘to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.’ ” Dolan, 512 U.S. at 384, 114 S.Ct. 2309 (quoting Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1654 (1960)). “[A] plaintiff seeking to challenge a government regulation as an uncompensated taking of private property may proceed under one of the” four theories identified in Lingle v. Chewron U.S.A., Inc., 544 U.S. 528, 548, 538, 546, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005),[1]
Highlands argues on appeal that the County’s exactions in this case do not satisfy the “rough proportionality” test, thereby invoking the fourth theory of unconstitutional takings addressed in the decisions of Nollan, 483 U.S. 825, 107 S.Ct. 3141, and Dolan, 512 U.S. 374, 114 S.Ct. 2309,[2] It appears from the language of its order that the trial court did not apply the Nollan and Dolan standard but instead concluded that this case is not subject to that standard because this case does not involve an adjudicative decision. We are not convinced that the County’s decision regarding Highlands was only legislative in nature and not adjudicative. While the County ordinance requiring the connection to a reuse system may also apply to other subdivisions in the county, Highlands’ permit was conditioned on the construction of the reuse improvements as well as its dedication of the improvements and land to the County,[3] Further, we consider the Nollan *1179 and Dolan standard because it is the basis for reversal argued by Highlands.
In evaluating whether an unconstitutional taking has occurred under the Nollan and Dolan theory of takings, a court must first “determine whether the ‘essential nexus’ exists between the ‘legitimate state interest’ and the permit condition exacted by the” government. Dolan, 512 U.S. at 386, 114 S.Ct. 2309 (quoting Nollan, 483 U.S. at 837, 107 S.Ct. 3141). If such a nexus exists, a court must then “determine whether the degree of exac-tions demanded by the [government’s] permit conditions bears the required relationship to the projected impact of the petitioner’s proposed development.” Dolan, 512 U.S. at 388, 114 S.Ct. 2309 (citing Nollan, 483 U.S. at 834, 107 S.Ct. 3141). The conditions of the permit must have a “rough proportionality” in “nature and extent to the impact of the proposed development.” Dolan, 512 U.S. at 391, 114 S.Ct. 2309. This standard applies in the “special context of exactions—land-use decisions conditioning approval of development on the dedication of property to public use.” City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 702, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). The test. “considers whether dedications demanded as conditions of development are proportional to the development’s anticipated impacts.” Id. at 703, 119 S.Ct. 1624.
Under Nollan and Dolan[,3 the government may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development, but it may not leverage its legitimate state interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts.
Koontz, 133 S.Ct. at 2595.
Here, there is,a clear legitimate state interest in new developments using reclaimed water. The Florida Legislature has declared that “[t]he encouragement and promotion of water conservation and reuse of reclaimed water ... are state objectives and considered to be in the public interest.” § 373.250(l)(a), Fla. Stat. (2003).[4] The Polk County Comprehensive Plan, Infrastructure Element Changes For Reclaimed/ Reuse Water 2002-2011, advances the state’s interest in conserving water for the future:
OBJECTIVE 3.105-D: Polk County shall preserve existing water supplies *1180 (potable, industrial, and agricultural) to meet the demands for future growth.
[[Image here]]
POLICY 3.105-D6: The County shall develop a program to implement the use of properly treated wastewater for agricultural and residential irrigation, industrial coolant, and other activities which do not require the use of potable water.
There is also a clear nexus between the legitimate state interest in conserving water and the permit conditions imposed by the County requiring the use of reclaimed water in the subdivision. The conditions require the installation and dedication of reuse improvements so that the future residents of the subdivision have access to reclaimed water and are not required to use potable water for residential irrigation.
Next, we turn to whether the conditions of the permit bear the required relationship to the projected impact of Highlands’ proposed development, i.e., whether the conditions of the permit have a “rough proportionality” in “nature and extent to the impact of the proposed development.” Dolan, 512 U.S. at 391, 114 S.Ct. 2309. Highlands applied for a permit to develop a subdivision consisting of sixty residential lots as well as common areas. The County required the installation and dedication of reuse improvements in the subdivision that will be used by the future residents for landscape irrigation. The conditions imposed by the County are directly related to the impact of the subdivision on the state’s water resources and do not impermissibly reach beyond that impact. The fact that reclaimed water was not available for two years, requiring Highlands to use potable water to irrigate the landscaping in its common areas during that time, does not alter the conclusion that the reuse improvements have a rough proportionality to the impact of the development. The unavailability of reclaimed water for the common areas for a period of two years is insignificant in comparison to the availability of reclaimed water for the indefinite future of the entire sixty-lot subdivision.
Because we conclude that the exactions in this case do not constitute an unconstitutional taking under the standard set forth in Nollan and Dolan, Highlands’ claims for inverse condemnation under the U.S. constitution must fail. See Sarasota Welfare Home, Inc. v. City of Sarasota, 666 So.2d 171, 173 (Fla. 2d DCA 1995) (“Inverse condemnation is a cause of action by a property owner to recover the value of property that has been de facto taken by an agency having the power of eminent domain where no formal exercise of that power has been undertaken.” (citing City of Pompano Beach v. Yardarm Rest., Inc., 641 So.2d 1377 (Fla. 4th DCA 1994)). Further, because Highlands did not establish an unconstitutional taking under the U.S. constitution, it has failed to establish an unconstitutional taking under the Florida Constitution. See St. Johns River Mgmt. Dist. v. Koontz, 77 So.3d 1220, 1226 (Fla. 2011) (“[T]his Court has interpreted the takings clauses of the United States and Florida Constitutions coextensively.”), quashed on other grounds by Koontz, — U.S. -, 133 S.Ct. 2586.
Affirmed.
NORTHCUTT and CRENSHAW, JJ., Concur.

.The first two are narrow categories that involve a physical invasion of property, see Loretto v. Teleprompter Manhattan CATV Corn., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), or a regulation that completely deprives an owner of all economically beneficial use of his or her property, see Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Lingle, 544 U.S. at 538, 548, 125 S.Ct. 2074. The third category of takings is gov- . erned by the standard set forth in Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), and the fourth category is governed by the standard set forth in Nollan and Dolan. Lingle, 544 U.S. at 538-39, 548, 125 S.Ct. 2074. Because Highlands relies solely on the Nollan and Dolan standard in its initial brief, we do not address the other theories of taking. See Lingle, 544 U.S. at 548, 125 S.Ct. 2074 (holding that because the property owner argued only a theory of taking that was no longer a valid theory, property owner did not demonstrate his entitlement to relief).

. In arguing that the exactions in this case did not satisfy the "rough proportionality” test, Highlands relies on the case of Koontz v. St. Johns River Water Management District, — U.S. -, 133 S.Ct. 2586, 186 L.Ed.2d 697 (2013). However, Koontz relies on the test set forth in Nollan and Dolan, and we do not read Koontz as altering that test in any way that affects this case,

. In Dolan, the Court distinguished "essentially legislative determinations classifying entire areas of the city” from an "adjudicative decision to condition petitioner's application for a building permit on an individual parcel.” 512 U.S. at 385, 114 S.Ct. 2309. The Dolan Court also noted that the plaintiff in that case was required to "deed portions of *1179 [her] property to the city.” Id Despite this language in Dolan, it is unclear whether the Nollan and Dolan standard applies to generally applicable legislative determinations that affect property rights. See Koontz, 133 S.Ct. at 2608 (Kagan, J., dissenting) (questioning whether the majority in Koontz accepts the Dolan distinction between legislative determinations and adjudicative decisions); McClung v. City of Sumner, 548 F.3d 1219, 1225 (9th Cir. 2008) (acknowledging that courts have come to different conclusions on whether the Nollan and Dolan standard applies to a "legislative, generally applicable development condition that does not require the owner to relinquish rights in the real property”), abrogated by Koontz, — U.S. -, 133 S.Ct. 2586; see also Town of Flower Mound v. Stafford Estates Ltd. P'ship, 135 S.W.3d 620, 640-41 (Tex. 2004) (noting that "a workable distinction can[not] always be drawn between actions denominated adjudicative and legislative”). Even though the County’s exactions in this case are authorized in part by a County ordinance, they are also adjudicatory in nature in that they were in response to Highlands’ request for a permit and they required Highlands to dedicate a portion of .its land,

. .Reclaimed water was defined in 2012 as “water that has received at least secondary treatment and basic disinfection and is reused after flowing out of a domestic wastewater treatment facility.” § 373.019(17), Fla. Stat. (2012); ch. 2012-150, § 1, Laws of Fla. Also in 2012, the legislature acknowledged that the use of reclaimed water helps "to sustain water resources for the future.” § 373.250(l)(b); ch. 2012-150, § 2, Laws of Fla.