DAVIS, Judge.
The State of Florida appeals the final judgment entered in favor of Galaxy Fireworks and Itzhak Dickstein (Appellees) by which they were awarded $1 million in damages plus prejudgment interest in an inverse condemnation case. We reverse.
Appellees are major retailers of fireworks in the State of Florida. They filed their inverse condemnation action in response to Executive Order 98-165, which was entered in 1998 by then Governor Lawton Chiles and forbade the sale, use, or discharge of fireworks or sparklers for the period of June 25 through July 9,1998. In their complaint, Appellees claimed that the prohibition of the sale of their fireworks during the Fourth of July holiday deprived them of the economic benefit of their inventories. This, they argue, was a compensable taking in violation of the Fifth Amendment of the United States Constitution.
In 1998, a dry spring led into a drier summer that resulted in brush fires breaking out across the state. In response to these dangerous conditions, the governor issued his order prohibiting the sale, use, or discharge of fireworks, hoping to reduce the danger of additional fires accidentally being started by the explosion of the fireworks.
*899 Appellees argued below that generally they realize approximately seventy percent of their annual profits during the Fourth of July holiday season and that it takes them approximately two months leading up to the holiday to prepare for the big sales period. Although Appellees stipulated that the executive order was a proper use of the State’s police power, they maintained that the result was a compen-sable taking of their profits.
On April 11, 2005, the trial court entered final summary judgment in favor of the State, determining that there was no com-pensable taking. However, this court reversed that final order, concluding that summary judgment was improper because there remained a material issue of fact regarding the scope of the executive order’s limitation of transporting the fireworks. See Galaxy Fireworks, Inc. v. Bush, 927 So.2d 995 (Fla. 2d DCA 2006). On remand, the trial court held a bench trial and determined that there had been a compensable taking and that the damages would be decided by jury trial. The parties, however, stipulated that the damages would be $1 million plus prejudgment interest. Accordingly, the trial court entered a final judgment in the amount of $1,108,494.40 in favor of Appellees. It is this final judgment that the State now challenges.
Initially, we note that there are no contested issues of fact in this case. The State presented evidence regarding the dry and dangerous conditions of the summer of 1998, and Appellees did not dispute that fact. Based on that and the parties’ stipulation as to the amount of damages, the only issue before this court is whether, as a matter of law, Executive Order 98-165 resulted in a compensable taking of Appellees’ inventories. After applying the three factors promulgated by the United States Supreme Court in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), we conclude that it did not.
The Fifth Amendment to the United States Constitution provides that private property shall not “be taken for public use without just compensation.” This most often implicates the eminent domain power of the state exercised in the taking of title to real property from an individual for a public use. However, the courts have interpreted this guaranty to apply not only to real property but to personal property as well. See, e.g., Andrus v. Allard, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979) (addressing the issue of whether the Eagle Protection Act and the Migratory Bird Treaty Act amounted to a compensa-ble taking of the personal property of ap-pellees who were engaged in the trade of Native American artifacts partially composed of bird feathers). Additionally, this protection was originally understood to apply to direct appropriations of property, i.e., situations in which an owner was permanently deprived of the title to his or her property. However, in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), the United States Supreme Court ruled that to restrain the use of private property by regulation in conjunction with the state’s police power also might result in a compensable taking. The Court concluded that “if regulation goes too far[,] it will be recognized as a taking.” Id. at 415. But the Court offered little insight in Pennsylvania Coal into when and under what circumstances a regulation goes too far.
However, in Penn Central, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) the Court set forth three factors to be considered in determining whether a regulation amounts to a compensable taking. In that case, the owners of certain real property in downtown Manhattan had plans to expand *900 a building that sat on the property by constructing additional stories above an existing rail station. Id. at 116. The City of New York denied the permits for the construction, citing the historic preservation plan that the city had adopted pursuant to its police power. Id. at 117. The property owners argued that denying them the use of their property by the restrictions imposed by the historic plan resulted in a compensable taking of their property. Id. at 119.
In addressing the owners’ argument, the Supreme Court set forth the following three factors to be considered in determining whether there has been a compensable taking: (1) “[t]he economic impact of the regulation on the claimant,” (2) “the character of the governmental action,” and (3) “the extent to which the regulation has interfered with distinct investment-backed expectations.” Penn Central, 438 U.S. at 124. Applying these three factors to the instant case, we conclude that the executive order here did not amount to a com-pensable taking.
First, the limitation on the sale of the fireworks for a two-week period was not a total denial of the value of the property to Appellees. Appellees maintained their ownership of their fireworks inventories, had the right to transfer their inventories to an out-of-state location where sales were permitted, and in fact did sell the same inventories after the expiration of the two-week ban on sales. Appellees were not denied the value of their property, only the profits that might have been earned in the State of Florida during that specific time period — profits that ultimately were realized by the subsequent sale of the assets.
Second, with regard to the character of the government action, the executive order here was, as Appellees stipulated below, a valid exercise of the state’s police power. The need for the limitation was the dangerous conditions that temporarily existed in the state at that particular time. Such a temporary limitation on the right to sell required by the widespread dangerous conditions mitigates against this being considered a compensable taking. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 426, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (“As Penn Central affirms, the Court has often upheld substantial regulation of an owner’s use of his property where deemed necessary to promote the public interest.”); see also Keshbro, Inc. v. City of Miami, 801 So.2d 864 (Fla.2001) (concluding that a city’s regulation temporarily prohibiting the total use of a motel was not a compensable taking when done so under the exercise of the city’s police power).
Finally, the limitation was not an interference with Appellees’ investment-backed expectations. Regardless of the executive order, the sale of fireworks is a heavily regulated business. In fact, Appellees complain that one of the reasons they could not easily transport the inventory for sale elsewhere is that Florida’s closest neighbor, the State of Georgia, had banned all sales. As such, it would be reasonable to conclude that Appellees were on notice of the possibility, if not the probability, that further regulations may be enacted from time to time. See Chang v. United States, 859 F.2d 893 (Fed.Cir.1988) (concluding that there was no compensable taking of certain contractual rights where President Reagan’s imposition of sanctions against Libya could not have interfered with investment-backed expectations when such a possibility was or should have been known prior to making the contracts); see also Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (denying compensable *901 taking claim for the interference of contractual rights involving ERISA when Congress changed the rules of the program); cf. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1027-28, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (“[B]y reason of the State’s traditionally high degree of control over commercial dealings, [the property owner] ought to be aware of the possibility that new regulation might even render his property economically worthless (at least if the property’s only economically productive use is sale or manufacture for sale).” (citing Andrus, 444 U.S. at 66-67)).
In Andrus, the Court considered a limitation on the sale of Native American artifacts and determined that the limitation was not a compensable taking.
[T]he denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full “bundle” of property rights, the destruction of one “strand” of the bundle is not a taking, because the aggregate must be viewed in its entirety. In this case, it is crucial that appellees retain the rights to possess and transport their property....
444 U.S. at 65-66 (citations omitted). Although the Andrus Court noted that the restriction at issue there denied the owner of the “most profitable” use of the property, it concluded that such fact was not dispositive. Id. at 66. The Court held that “the simple prohibition of the sale of lawfully acquired property in this ease does not effect a taking in violation of the Fifth Amendment.” Id. at 67-68.
Here, the sale of fireworks is highly regulated due to the potential danger resulting from their discharge. Appellees voluntarily invested in their inventories knowing that the regulation of the sale and use of such was subject to change from time to time and from locality to locality. The temporary limitation on the sale of the fireworks under these facts does not rise to such, an interference with investment-backed expectations as to constitute a com-pensable taking.
Therefore, our application of the Penn Central factors to the instant case leads us to conclude that the executive order at issue did not amount to a compensable taking of Appellees’ fireworks inventories. Accordingly, we reverse the trial court’s final judgment.
Reversed.
KHOUZAM and CRENSHAW, JJ., Concur.