IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


ORLANDO BAR GROUP, LLC D/B/A
THE BASEMENT, THE ATTIC AND
THE TREEHOUSE,

      Appellants,

v.                                                                Case No.  5D21-1248
                                                                  LT Case No. 2020-CA-010922-O

RON DESANTIS, IN HIS OFFICIAL CAPACITY
AS THE GOVERNOR OF THE STATE OF
FLORIDA, FLORIDA DEPARTMENT OF BUSINESS
AND PROFESSIONAL REGULATION, ORANGE COUNTY, ET AL.,

      Appellees.

_____/

Opinion filed June 3, 2022

Appeal from the Circuit Court
for Orange County,
John E. Jordan, Judge.

David H. Simmons, Deborah
I. Mitchell, and Caitlin N.
Emling, of de Beaubien,
Simmons, Knight, Mantzaris
& Neal, LLP, Orlando, and
Spencer R. Munns, Joseph
C. Shoemaker, and Jonathan
G. Dulaney, of Bogin, Munns

& Munns, P.A., Orlando for Appellants.

Raymond F. Treadwell, of Executive Office of the Governor, Tallahassee, for Appellee, Ron DeSantis.

David Axelman and Joseph Yauger Whealdon, III, of Department of Business and Professional Regulation, Tallahassee, for Appellee, for Department of Business and Professional Regulation.

Scott Robert McHenry, of Orange County Attorney's Office, Orlando, for Appellee, Orange County, Florida.

No Appearance for Remaining Appellees.

EDWARDS, J.

### ON MOTION FOR REHEARING, REHEARING EN BANC, AND CERTIFICATION

We deny Appellants' motions for rehearing, rehearing en banc, and for certification. However, we substitute the following revised opinion in place of the original opinion.

In early response to the COVID-19 pandemic, various state and local officials issued executive orders, some of which closed or severely restricted the operation of bars. Appellants, Orlando Bar Group, LLC d/b/a The Basement, The Attic, and The Treehouse, sued Appellees, Governor Ron DeSantis, in his official capacity as the governor of the State of Florida, the Florida Department of Business and Professional Regulations ("DBPR"), and Orange County, Florida, seeking money damages for inverse condemnation. Here, Appellants appeal the trial court's order which granted Appellees' motions to dismiss with prejudice. Appellants raise multiple issues on appeal; several merit discussion, whereas others do not. Based on existing law, we affirm as explained below and as to all other issues as well.

Executive COVID-19 Orders

In March of 2020, Governor DeSantis, employing executive orders, declared a state of emergency and temporarily suspended all sales of alcoholic beverages for vendors who derived more than fifty percent of their gross revenue from the sale of alcoholic beverages. Three days later, the Governor issued another executive order that suspended the sale of alcoholic beverages for on-premises consumption but allowed bars and restaurants to sell sealed, unopened, alcoholic beverages for off-premises consumption. Later-issued orders limited the operation of bars to seated service and

3

reduced permissible operational capacity to half the normal occupancy previously permitted by law. The DBPR and Orange County's mayor issued other orders which temporarily prohibited or limited the normal operation of bars. After a period of time, bars were allowed to resume normal operation. Appellants' complaint alleged that they were among the bars whose business operations were adversely affected by the various executive orders.

In their complaint, Appellants claimed that the temporary closure and later restrictions of their businesses constituted governmental takings that amounted to inverse condemnation entitling them to compensation. Appellees responded with motions to dismiss. Following a hearing, the trial court entered a lengthy order dismissing Appellants' complaint with prejudice.[1] Appellants did not move to amend their complaint, nor did they move for rehearing. They did timely appeal the trial court's order.

## Analysis

Under the Florida Constitution, private property cannot be taken by the government unless it is for public use and the owner of the property is fully

---

[1] Appellants' claim for declaratory relief was also dismissed with prejudice. We affirm that portion of the trial court's order without further discussion.

compensated. Art. X, § 6, Fla. Const.[2] "Inverse condemnation is a cause of

action by a property owner to recover the value of property that has been *de*

*facto* taken by an agency having the power of eminent domain where no

formal exercise of that power has been undertaken." *Ocean Palm Golf Club*

*P'ship v. City of Flagler Beach*, 139 So. 3d 463, 471 (Fla. 5th DCA 2014)

(quoting *Osceola Cnty. v. Best Diversified, Inc*., 936 So. 2d 55, 59–60 (Fla.

5th DCA 2006)).

*Penn Central* vs. *Cedar Point* Test

As explained by the Supreme Court, there are two categories of

governmental takings: physical and regulatory. *See Cedar Point Nursery v.*

*Hassid*, 141 S. Ct. 2063, 2071 (2021). "The government commits a physical

taking when it uses its power of eminent domain to formally condemn

property." *Id*. (citing *United States v. Gen. Motors Corp*., 323 U.S. 373, 374–

75 (1945); *U.S. ex rel. TVA v. Powelson*, 319 U.S. 266, 270–71 (1943)). The

government also commits a physical taking where it "takes possession of

property without acquiring title to it." *Id*. (citing *United States v. Pewee Coal*

---

[2] The Takings Clause of the Fifth Amendment of the United States Constitution is interpreted by Florida courts to operate coextensively with article X, section 6(a) of the Florida Constitution. *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So. 3d 1220, 1222 (Fla. 2011), *rev'd on other grounds*, *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 596 (2013).

*Co.*, 341 U.S. 114, 115–17 (1951)). When a physical taking has occurred, the rule is simple: "The government must pay for what it takes." *Id*.

On the other hand, a regulatory taking may occur when the government "imposes regulations that restrict an owner's ability to use his own property . . . ." *Id*. (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321–22 (2002)). "To determine whether a use restriction effects a taking, this Court has generally applied the flexible test developed in *Penn Central,*[3] balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id*. at 2072. However, "[w]henever a regulation results in a physical appropriation of property, a *per se* taking has occurred, and *Penn Central* has no place." *Id*.

Appellants contend that they sufficiently alleged that the COVID executive orders complained of constituted a per se taking because the orders deprived them of their right to regulate access to their businesses. Thus, Appellants argue that the *Penn Central* test, employed by the trial court, does not apply to their claim and that the simple per se rule—the government must pay for what it takes—applies to the COVID orders.

---

[3] *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104 (1978).

6

Appellants' initial argument is that the trial court should have denied Appellees' motion to dismiss based upon the Supreme Court's recent *Cedar Point* decision. In *Cedar Point*, a California regulation allowed labor organizations the right to access an agricultural employer's property in order to petition support for unionization. *Id*. at 2069. Specifically, the regulation mandated that agricultural employers allow union organizers onto their property for up to three hours a day for 120 days a year. *Id*. The Court held that this regulation "appropriate[d] a right to invade the growers' property and therefore constitute[d] a *per se* physical taking." *Id*. at 2072. Significantly, the Supreme Court reasoned that the California regulation violated "'one of the most treasured' rights of property ownership": the right to exclude. *Id*. (citation omitted).

Here, Appellants do not allege that the COVID orders violated their right to exclude; rather, they argue the opposite and claim that the orders violated "the right of property owners to allow others access to their properties." The Supreme Court's holding in *Cedar Point* did not address and does not support this alleged right.

The COVID orders at issue here did not permit third parties to access Appellants' property; they did the opposite by preventing Appellants from having patrons on their premises and temporarily prohibiting Appellants from

7

selling alcohol for on-premises consumption. As such, the COVID orders did not result in a physical appropriation and per se taking of Appellants' property; rather, the COVID orders regulated Appellants' use of their property. Consequently, Appellants are incorrect that the simple per se rule governs their takings claims. Since the COVID orders were regulations affecting Appellants' ability to use their property, the *Penn Central* test was appropriate to employ in determining whether the COVID orders amounted to a taking. Thus, Appellants' argument that the trial court erred in employing the *Penn Central* test rather than the *Cedar Point* test is unavailing.

Categorical Regulatory Taking

Appellants next argue that their inverse condemnation claim should have survived based upon *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992). The Supreme Court found a categorical regulatory taking in *Lucas* because the "[governmental] regulation denies all economically beneficial or productive use of land." *Id*. In *Lucas*, a landowner purchased property and intended to build homes on the property. *Id*. at 1006–07. Before the landowner could build any homes, South Carolina passed legislation which barred him from erecting any permanent and habitable structures on the property. *Id*. at 1007. The Supreme Court held that "when the owner of

8

real property has been called upon to sacrifice *all* economically beneficial uses . . . he has suffered a taking." *Id*. at 1019.[4]

As the Court later explained in *Tahoe*, *Lucas*' holding was "limited to 'the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted.'" 535 U.S. at 330 (quoting *Lucas*, 505 U.S. at 1017). "The emphasis on the word 'no' in the text of the opinion was, in effect, reiterated in a footnote explaining that the categorical rule would not apply if the diminution in value were 95% instead of 100%." *Id*. (citing *Lucas*, 505 U.S. at 1019 n.8).

Taking Appellants' allegations in their complaint to be true, the economic impact of the COVID orders on their business was significant. However, the impact of the orders amounted to a complete prohibition on the sale of alcoholic beverages for only seventeen days, following which Appellants' businesses were incrementally permitted to return to limited sales and operation before being allowed to return to their pre-pandemic mode in approximately six months.

In *Tahoe*, an owner's planned development was delayed for a period of thirty-two months to allow for a study of the impact of all nearby real estate

---

[4] Appellants did not allege in their complaint that they owned the land on which their businesses operated.

development on the water quality of Lake Tahoe. 535 U.S. at 306. The Supreme Court found that the thirty-two-month moratorium did not constitute a taking. *Id.* at 319. The First District has similarly held that a temporary moratorium on development did not amount to a compensable taking. *Leon Cnty. v. Gluesenkamp*, 873 So. 2d 460, 466 (Fla. 1st DCA 2004); *Bradfordville Phipps Ltd. P'ship v. Leon Cnty.*, 804 So. 2d 464, 471 (Fla. 1st DCA 2001). The challenged executive orders here resulted in temporary cessation and limitation of Appellants' businesses, not a complete or permanent loss of the ability to do business. Accordingly, Appellants' second argument is likewise unavailing.

As-Applied Regulatory Taking

Appellants claim that even if their previous arguments fail, the executive orders nevertheless amounted to a governmental taking when analyzed using the *Penn Central* test. In *Ocean Palm Golf Club Partnership*, this Court laid out the factors to be considered when determining whether an as-applied taking has occurred:

> In *Penn Central*, the Court identified three factors to apply when engaging in an analysis of whether a regulation constitutes a taking: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.

139 So. 3d at 473 (quoting *Leon Cnty.*, 873 So. 2d at 460).

10

In *Scott v. Galaxy Fireworks, Inc.*, 111 So. 3d 898 (Fla. 2d DCA 2012), the Second District employed the *Penn Central* test to determine whether an executive order from Florida's governor, which prohibited the sale of fireworks from June 25 to July 9, 1998, constituted a taking. *Id*. at 898.  Looking at the first factor, economic impact on the claimant, the Second District found that the fireworks sellers were not totally denied the value of their property, since they could have sold their fireworks out-of-state and also could sell the fireworks after the prohibition ended. *Id*. at 900.  When analyzing the second factor, interference with the firework seller's investment-backed expectations, the Second District noted that fireworks are a highly regulated business and the sellers should have been on notice that further regulations could be enacted from time to time. *Id*. When considering the third factor, character of the governmental action, the Second District found that the executive order was a valid exercise of the state's police power, which was necessary to limit the dangerous conditions that existed in Florida due to a dry period causing an increased susceptibility to wildfires. *Id*.; *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) ("As *Penn Central* affirms, the Court has often upheld substantial regulation of an owner's use of his own property where deemed necessary to promote the public interest."). Thus, the

11

Second District held that the executive order in question did not amount to a compensable taking. *Id.* at 901.

Applying the *Penn Central* factors to the case at hand, it is clear that the COVID orders did not constitute a taking. For the first factor, it is undisputed that Appellants, along with numerous other businesses, were financially impacted by the COVID orders. For the second factor, just like firework sellers, sellers of alcohol are also in a highly regulated business. *See generally* Ch. 561-568, Fla. Stat. (2021). For example, one of the emergency powers granted to the Governor by statute is the ability to halt the sale of alcohol during an emergency. *See* § 252.36(6)(h), Fla. Stat. (2021) (granting governor ability to suspend or limit the "sale, dispensing, or transportation of alcoholic beverages"). Thus, Appellants should have also been on notice that further regulations could be enacted. Lastly, in consideration of the third factor, the COVID orders represented a valid use of the state's police power to protect the general welfare, as noted by the trial court with citations to several other contemporary COVID decisions. If the state can use its police power to temporarily prohibit the sale of fireworks to prevent wildfires during an exceptionally dry period in Florida, it stands to reason that the state can also use its police powers to temporarily prohibit or restrict the sale of alcohol

in an effort to limit the spread of a then poorly understood, highly contagious and deadly virus.

As such, the impact of the COVID orders does not amount to a compensable taking under the *Penn Central* test.  Thus, because Appellants' complaint did not state a cause of action for an inverse condemnation claim under an as-applied taking theory, the motions to dismiss were properly granted.

<u>Dismissal Without Leave to Amend</u>

None of the Appellees answered the complaint.  Appellants' complaint was dismissed with prejudice based on the Appellees' motions to dismiss. Appellants correctly argue that plaintiffs typically have the ability to amend their complaint as a matter of right once prior to an answer being filed. *See Boca Burger, Inc. v. F.*, 912 So. 2d 561, 567 (Fla. 2005).  However, Appellants did not move for leave to amend, did not file a proposed amended complaint, and appealed rather than moving for rehearing on the dismissal being with prejudice.

In *Vorbeck v. Betancourt*, the Third District discussed several cases, including this Court's opinion in *Jelenc v. Draper*, 678 So. 2d 917, 918 n.1 (Fla. 5th DCA 1996), in reaching the conclusion that "[i]t is now well settled that the rule of preservation applies to the improper dismissal of a complaint

13

with prejudice." 107 So. 3d 1142, 1147–48 (Fla. 3d DCA 2012). "In the absence of fundamental error, an appellate court will not consider an issue that has been raised for the first time on appeal." *Keech v. Yousef*, 815 So. 2d 718, 719 (Fla. 5th DCA 2002). We hold that this issue has not been preserved for appellate review.

AFFIRMED.

EVANDER and HARRIS, JJ., concur.